Laramore, Judge,
delivered the opinion of the court:
This is a suit brought by The Wyoming National Bank of Wilkes-Barre, Pennsylvania, the successor corporation to the named assignee of a Government contract, the First National Bank of Plymouth, Pennsylvania. The suit is brought to recover sums allegedly wrongfully withheld as liquidated damages.
The questions presented, as set forth in plaintiff’s brief, are
(1) Whether the refusal by the Armed Services Board of Contract Appeals to grant plaintiff’s predecessor’s request for intervention constituted a denial of plaintiff’s predecessor’s rights under the “Delays — Liquidated Damages” clause of the contract so as to entirely disallow the Government’s claim for any liquidated damages on the grounds that they have failed to comply with the conditions of the contract;
(2) Whether under a liquidated damages provision in a contract, where the only portion of the provision which fixes the amount of the liquidated damages is made applicable to the situation where the contractor refuses or fails to make delivery of the materials or supplies within the time specified, or any extension thereof, the Government is entitled to liquidated damages for that part of the contract which has been terminated.
The facts are summarized as follows: Plaintiff in 1958 purchased all the assets of the First National Bank of Plymouth, Pennsylvania, the assignee of the Bo-Jack contract.
*592 The contract involved in this action, W30-280-qm-5947, dated October 30, 1947, was between the Bo-J ack Manufacturing Corporation and the War Department. It provided that Bo-Jack would manufacture for the Government 270,000 pairs of baker’s and cook’s white trousers for $1.99 per pair, the total contract price being $537,300. The contract also provided that the contractor would furnish all materials and the contract was executed on behalf of Bo-Jack by David Bose, President.
The delivery schedule, as amended, called for deliveries over the period December 31, 1947, to September 30, 1948. The contractor became delinquent in delivery under the contract. As of September 24, 1948, six days prior to the date on which deliveries of all 270,000 garments were to have been completed, the contractor had shipped only 92,190 pairs. The contractor asked for but did not receive extension of time to avoid assessment of liquidated damages as provided in the contract, and on October 1, 1948, the successor contracting officer terminated the contract for default as to 163,658 undelivered units. The work in process was not terminated. Bo-Jack completed and delivered a total of 106,342 pairs of trousers.
On October 26, 1948, Bo-J ack, represented by counsel, appealed the action of the contracting officer in terminating the contract and stated that failure to make deliveries was occasioned by acts of the defendant in not making a prompt award of the contract. A request was made for an extension of delivery date so as to eliminate liquidated damages, which request summarized the reasons therefor. The principal reason asserted for the extension was an alleged shortage of the cotton drill out of which the trousers were to be manufactured. On February 14, 1949, the aforesaid request for an extension of time was denied by the successor contracting officer. The appeal was, at the request of Bo-Jack’s attorney, placed on the suspense docket, and on October 18, 1949, the Appeals Board granted a Government motion to remove the case from the suspense docket and set it for hearing on December 6, 1949. Notice was sent to Bo-Jack’s attorney by registered mail and a return receipt acknowledged its delivery.
*593 Mr. Schwag, Bo-Jack’s attorney, wrote the Board advising it that Mr. David Bose, the President and only witness of the appellant company, was sentenced to serve a term in the Federal penitentiary, and again requested that the matter be placed on the suspense docket. On December 1, 1949, the Board notified Mr. Schwag that the case should proceed as set and that, if necessary, testimony of Mr. Bose could be taken by deposition.
Mr. Schwag then advised the Board on December 2, 1949, that neither he nor his client would be present at the hearing and that under the rules the matter could proceed ex -parte, and that he was requesting leave to take Mr. Bose£s deposition. There is no evidence that the deposition was ever taken or that any attempt was made to take it.
The Armed Services Board of Contract Appeals hearing was held on December 6, 1949. On this same day by letter Mr. Max Bosenn wrote the recorder of the Board referring to a telephone conversation of the previous day and enclosed notice of appearance on behalf of himself and a Mr. Boberts for the First National Bank of Plymouth, Pennsylvania, indicating an intention to file a petition to intervene. This letter was received by the Board on December 9,1949.
Under date of January 14,1950, Mr. Bosenn sent his petition to the Board and requested to be heard on it. In due course the petition was denied.
'Subsequently on July 27, 1950, the Armed Services Board of Contract Appeals rendered its written opinion and decision sustaining the action of the contracting officer and denied the petition to intervene.
In 1954 plaintiff filed its petition in this court. Defendant moved to summon Bo-Jack, the contractor, to appear as a third party, to defend its interest and to answer defendant’s claim against it. This motion was allowed and Bo-Jack is now a party to these proceedings.
The Government assessed liquidated damages against Bo-Jack in the amount of $193,805.37. Of this sum it has collected $54,201.99 by setoff against sums otherwise due under the contract, and makes claim against Bo-Jack in this suit for the balance of $139,603.38.
*594 In tbe instant suit Bo-Jack is represented by counsel and answered tbe defendant’s claim. Neither tbe contractor nor its counsel appeared at tbe trial although duly notified thereof.
Neither the contractor nor the plaintiff offered evidence at the trial on the issues before the Board other than the record of that proceeding.
Respecting the issue of the shortage of cotton drill, the evidence here discloses that the contractor’s supplier was ready, willing and able to supply all of this type of cloth that Bo-Jack needed to perform its contract with the Government. As a matter of fact, it has been shown that at the time the contractor was contending there was a short supply of the cloth in the textile markets, the contractor was actually selling a substantial quantity of tins same material to another company.
Respecting plaintiff’s contention that the refusal of the Armed Services Board of Contract Appeals to allow the First National Bank of Plymouth to intervene and that the refusal results in disallowment of the liquidated damage claim, the facts clearly show that any dispute under the contract was between Bo-Jack and the Government. The Board denied intervention, ruling that its jurisdiction was limited to ruling on the matter of the assessment of the liquidated damages and that it had no jurisdiction to determine the priority of the Government to payment of such claim for liquidated damages as against an assignee of the appellant. In this we think the Board was clearly correct. The dispute was a factual one with the contractor and involved facts relating to the performance of the contract. The rights of the First National Bank of Plymouth were limited to its right to receive money under the contract. If the contractor was entitled to money under the contract, then the Bank as assignee succeeded to those rights. However, as stated, it was clearly a dispute between the contractor and the Government. It was a dispute concerning a question of fact within the limitation of the disputes clause of the contract. Liquidated damages were assessed under the provisions of the contract, and inasmuch as the contractor owed the Government in this respect much more than it had coming, clearly the contractor *595 was entitled to nothing. Consequently, the assignee would also be entitled to nothing.
The attempted intervention by the Bank was for the purpose of getting Board action on a question of law and clearly the disputes clause relates only to questions of fact.
Furthermore, even if the Board should have granted intervention and did not, the plaintiff could have fully litigated the matter in this proceeding. Yet it offered no evidence to support its charge that the Board’s decision was arbitrary and capricious. Under these circumstances plaintiff is not now in a position to complain of the Board’s action.
Plaintiff’s next contention is that liquidated damages may not be charged on the terminated portion of the contract. This argument is refuted by the express terms of the contract. The provision entitled “Delays — Liquidated Damages” provides for liquidated damages in the event the contractor fails or refuses to make delivery. It provides further that the Government shall have the right to terminate that part of the contract on which there has been delays, to repurchase in the open market, charge the contractor with excess costs, together with liquidated damages accruing until such time as the Government may reasonably procure similar material or supplies elsewhere.
The Government followed the terms of the contract to the letter and we can find no merit in plaintiff’s contention that under the circumstances no liquidated damages could be charged on the terminated portion of the contract. Cf. Rose, et al. v. United States, 131 Ct. Cl. 475.
Furthermore, on the merits of the case the evidence discloses and the trial commissioner has found as a fact that the decision of the contracting officer and the Armed Services Board of Contract Appeals was supported by substantial evidence and was not arbitrary and capricious. The contractor had ample opportunity to present evidence at the Board hearing and did not do so. The plaintiff had ample opportunity to present evidence at the trial before the commissioner of this court and did not do so. The contractor sold exactly the same kind of material which was alleged to be in short supply. The contractor’s supplier was at all times ready, willing, anxious and able to supply the cloth. Under *596 these circumstances the contractor could have no right of recovery. ’Consequently the plaintiff, since its only right is to moneys due or to become due under the contract could have no right of recovery and its petition will be dismissed.
The contractor, Bo-Jack Manufacturing Corporation, was made a third party to defend its interest in this suit. It was notified, was represented by counsel, and filed its answer, signed by its President, Mr. David Bose. Neither the contractor nor its counsel appeared at the trial and no evidence was offered on its behalf, although both the contractor and its counsel were notified thereof. Under these circumstances it is evident that the contractor is not contesting the Government’s claim for liquidated damages. Defendant is, therefore, entitled to recover of and from the Bo-Jack Manufacturing Corporation the gross amount of $193,805.37 less $54,201.99 already recovered by setoff, leaving a net balance due of $139,603.38. Judgment for defendant will be entered in that amount.
It is so ordered.
Durfee, Judge; Madden, Judge; Whitaker, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Marion T. Bennett, and the briefs and argument of counsel, makes findings of fact as follows:
1. On June 26, 1953, plaintiff became the successor to the First National Bank of Plymouth, Pennsylvania, by virtue of an assignment which provided for transfer to plaintiff of “any and all accounts receivable, notes, bonds, leases, contracts, mortgages, securities of any and all types, conditional sales, bailment leases, documents of guarantee, and any and all types of actions, claims and demands wherein the said First National Bank of Plymouth, Plymouth, Pa., is the Obligee or the Beneficiary.” Included within the assignment was the claim on which the present suit is brought against the United States, the Plymouth bank being the as-signee of moneys due or to become due under a contract, dated October 30, 1947, held by the Bo-Jack Manufacturing Corporation, Plymouth, Pennsylvania, with the War *597 Department, Quartermaster Corps, for the manufacture of baker’s and cook’s white trousers.
2. The defendant moved the court to summon Bo-Jack Manufacturing Corporation to appear as a third party to defend its interest in the suit, to answer the claim of defendant and to assert any claim or interest it might have. The motion was allowed and defendant’s claim was served upon the third party. On November 17, 1955, the third party, Bo-Jack, filed its answer which was signed, “Bo-Jack Manufacturing Corporation, by David Bose, President.” Mr. Bose attached his affidavit to the answer. A motion was filed at the same time by Attorney Charles V. Linshaw of Philadelphia, as attorney for Bo-Jack, for leave to waive printing. The court allowed that motion.
3. Defendant’s claim is that Bo-Jack became liable to it in the total sum of $193,805.37 as liquidated damages for failure to deliver on time and that $54,162.19 has been set off against sums otherwise due, leaving a balance due defendant of $139,643.18. Defendant seeks judgment for the latter amount against the third party and dismissal of plaintiff’s claim. Plaintiff claims the $54,162.19.
4. The contract involved in this action, W30-280-QM-5947, dated October 30,1947, was between the Bo-Jack Manufacturing Corporation and the War Department. It provided that Bo-Jack would manufacture for the Government, 270,000 pairs of baker’s and cook’s white trousers for $1.99 per pair, the total contract price being $537,300. It also provided that the contractor would furnish all materials and was executed on behalf of Bo-Jack by David Bose, president.
5. The contract contained the following provisions:
Aeticle 16. disputes. — Except as otherwise specifically provided in this contract, all disputes concerning questions of fact which may arise under this contract, and which are not disposed of by mutual agreement, shall be decided by the Contracting Officer, who shall mail to the Contractor a written notification of his determination. Within 30 days from said mailing the Contractor may appeal to the Secretary of War, whose decision shall be final and conclusive upon the parties. Pending decision of a dispute hereunder the Contractor *598 ffbn.n diligently proceed with the performance of this contract.
*****
Delays-liquidated damages: If the Contractor refuses or fails to make delivery of the materials or supplies within the time specified or any extension thereof, the actual damage to the Government for the delay will be impossible to determine, and in lieu thereof the Contractor shall pay to the Government, as fixed, agreed, and liquidated damages for each calendar day of delay hi making delivery, the amount as set forth in the specifications or accompanying papers, and the Contractor and his sureties shall be liable for the amount thereof: Provided, however, That the Government reserves the right to terminate the right of the Contractor to proceed with deliveries or such part or parts thereof as to which there has been delay, and to purchase similar material or supplies in the open market or secure the manufacture and delivery thereof by contract or otherwise, charging against the Contractor and his sureties any excess cost occasioned the Government thereby, together with liquidated damages accruing until such time as the Government may reasonably procure similar material or supplies elsewhere: Provided further, That the Contractor shall not be charged with liquidated damages; or any excess cost when the delay in delivery is due to unforeseeable causes beyond the control and without the fault or negligence of the Contractor, including, but not restricted to, acts of God or the public enemy, acts of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, unusually severe weather, and delays of a subcontractor due to such causes unless the Contracting Officer shall determine that the materials or supplies to be furnished under the subcontract are procurable in the open market, if the Contractor shall notify the Contracting Officer in writing of the cause of any such delay, within 10 days from the beginning thereof, or within such further period as the Contracting Officer shall, with the approval of the Secretary of War or his duly authorized representatives, prior to the date of final settlement of the contract, grant for the giving of such notice. The Contracting Officer shall then ascertain the facts and extent of the delay and extend the time for making delivery when in his judgment the findings of fact justify such an extension, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject only to appeal, within 30 days, by the *599 Contractor to tbe Secretary of War or bis duly authorized representative, whose decision on such appeal as to the facts of delay and the extension of time for making delivery shall be final and conclusive on the parties hereto.
Note : If the Contractor refuses or fails to make delivery of the materials, or supplies, within the time specified, or any extension thereof, the actual damage to the Government will be impossible to determine. Therefore, subject to the terms and conditions of the above paragraph, the Contractor shall pay to the Government as liquidated damages for each undelivered item a sum equal to one fifth of one percent (% of 1%) of the price of each unit for each day’s delay after the delivery date, or dates.
6. On November 21, 1947, Bo-Jack assigned to the First National Bank of Plymouth, Plymouth, Pennsylvania, “all moneys due or to become due” under the contract. The assignment was acknowledged on behalf of the contracting officer by endorsement dated November 24,1947.
7. The contract as originally executed provided that the trousers would be delivered on a schedule extending from November 30, 1947 through August 31, 1948. On February 3, 1948, however, this delivery schedule was changed to extend over the period December 31, 1947 to September 30, 1948. The modification stated in part:
WITNESSETH
Wheeeas, the Government was unable to complete procedures for the acceptance of subject contractor’s bid, under Invitation QM 30-280-48-11, Trousers, Baker and Cook, White, within the time allotted therefor by the contractor, and
Wheeeas, the Government’s time to accept the said bid was extended by the contractor upon the understanding that the contractor’s time within which to make deliveries would be extended accordingly, and
Wheeeas, approval of an extension of the contractor’s time within which to make deliveries, as hereinafter set forth, has been given by the Office of the Quartermaster General (TWXQXB 149 Morgan), and
Wheeeas, the parties have agreed to amend the contract as hereinafter set forth.
Now, thebeeobe, This Supplemental Agreement is this day entered into between the Government and the
*600 Contractor, said parties mutually agreeing as follows:
1. The delivery dates as set forth in Contract W30-280-qm-5947 (O.I. 887) dated October 30, 1947, are deleted and the following substituted:
21,600 pr. to be delivered by 31 December 1947
27,000 pr. additional to be delivered by 31 January 1948
29,700pr. additional to be delivered by 29 February 1948
29,700pr. additional to be delivered by 31 March 1948
29,700pr. additional to be delivered by 30 April 1948
32,400 pr. additional to be delivered by 31 May 1948
29,700pr. additional to be delivered by 30 June 1948
29,700pr. additional to be delivered by 31 July 1948
29,700pr. additional to be delivered by 31 August 1948
10,800 pr. additional to be delivered by 30 September 1948.
8. The contractor was not able to meet the delivery dates required by the above schedule. As of September 24, 1948, six days prior to the date on which deliveries of all 270,000 garments were to have been completed, it had shipped only 92,190 pairs. The contractor asked for but did not receive extensions of time to avoid assessment of liquidated damages as provided in the contract. On October 1, 1948, the successor contracting officer terminated the contract for default as to 163,658 undelivered units. The work in process was not terminated. Bo-Jack completed and delivered a total of 106,342 pairs.
9. On October 26,1948, Bo-Jack appealed the action of the contracting officer in terminating the contract for default and stated that failure to make deliveries was occasioned by acts of the defendant in not making a prompt award of the contract. Attorney Samuel F. Schwag of Philadelphia was designated by Bo-Jack to represent it in future negotiations and correspondence, and on February 8, 1949, he submitted to defendant a letter, requesting an extension of delivery dates, so as to eliminate liquidated damages, and summarizing the contractor’s reasons therefor.
*601 10. Oil February 14, 1949, the aforesaid request for an extension of time was denied by the successor contracting officer. His letter, sent to both the contractor and Mr. Schwag, stated as follows:
This is with reference to your letters dated 10 December 1947, 15 July 1948 and 1 December 1948 requesting an extension of time for such period as would nullify any charges for Liquidated-Damages and excess costs by reason of the delay in deliveries and the partial termination of Contract W 30-280-QM-5947, 0.1. 887.
Your request is predicated on the statements that “delays in deliveries and termination” was occasioned by the delay by the Government in making the award and the refusal by the Government to authorize the use of the additional manufacturing plant at Manti, Utah.
These letters are supplemented by letters from Samuel P. Schwag, Esq., dated 21 December 1948 and 8 February 1949, summing up the reasons for the support of a request for an extension of time as follows:
a. The delay in awarding the contract caused delays in deliveries, notwithstanding the extensions granted for the acceptance of contractor’s bid, made under a “form of duress.”
b. The inability to obtain Drill due to delay in making the award and the “acute constricted market during the months of October, November and December 1947 and January and February 1948,” were causes of delays in delivery.
c. The refusal by the Government to grant permission to use a plant at Manti, Utah, to produce a quantity of the contractual items caused delay in deliveries.
In connection therewith, your attention is invited to the Delays, Liquidated Damage Clause of the contract which provides “that the contractor shall not be charged with Liquidated Damages; or any excess cost when the delay in delivery is due to unforeseeable causes beyond the control and without the fault or negligence of the contractor.”
With respect to contractor’s assertion that you granted the Government’s request for an extension of time within which to accept your bid under Invitation for Bid No. QM30-280-48-11 because it was a “form of duress” due to contractor’s financial situation at that time, it is believed that this factor cannot be construed as excusable cause of delay under the terms of the contract.
*602 Furthermore, the records of this office indicate that in Supplemental Agreement, Modification “A”, dated 3 February 1948, contractor agreed to an extension of 30 days of the delivery period due to delay by the Government in accepting contractor’s bid.
It is the opinion of the undersigned that the contractor has produced no evidence to indicate that its failure to obtain materials necessary for the manufacture of the contractual item was due to causes that would be excusable under the Delays-Liquidated Damages Clause of the contract.
Pertaining to contractor’s assertion that delays in deliveries were due to the failure of the Government to authorize the use of the plant at Manti, Utah, the records of this office indicate that contractor in letter dated 15 April 1948 requested permission to use the plant at Manti, Utah and stated in that letter that it requested the use of the plant for a short and temporary period so that its deliveries could be brought up to date. Therefore it would appear that the Government’s failure to authorize the use of this plant was not the cause of the delays in deliveries.
In view of the foregoing, it is regretted that your request for an extension of time within which to make deliveries cannot be granted under the terms of the contract.
11. On March 8,1949, Bo-Jack’s attorney wrote defendant referring to the above letter, advising that further evidence was being gathered, stating that, if defendant’s letter of February 14 was a finding of fact, it was appealed from but that it was requested the matter not be transmitted to the Board of Contract Appeals until additional evidence regarding the impossibility of obtaining cotton drill was produced.. On May 27, 1949, the successor contracting officer replied inquiring when the data would be submitted. On June 3, 1949, Mr. Schwag replied that Bo-Jack’s president was elsewhere engaged, that there would be a delay, and again requested that the appeal not be submitted to the Board of Contract Appeals until opportunity had been afforded to furnish additional information.
12. On June 9,1949, the Quartermaster Purchasing Office, New York City, wrote the Armed Services Board of Contract Appeals, referring to the exchange of correspondence mentioned in the finding above and stating in part:
*603 2. Since there is no way of knowing when such additional information will be forthcoming, advice is requested as to whether the Board desires a report based upon the presently available evidence and will make a decision thereon or whether the Contractor’s letters indicate an intention to abandon its appeal.
3. Liquidated damages assessed and uncollected against this contract amount to approximately $141,000, and in similar cases in this office where money is due and owing the Government, undue delay in arriving at a final decision may conceivably prejudice the Government in ultimately effecting collection of the moneys owed.
13. With reference to the above inquiry, the recorder of the Armed Services Board of Contract Appeals requested the Quartermaster Purchasing Office on June 23, 1949, to forward to the board a report based upon available evidence, together with supporting papers, as there was no way of knowing when the contractor would supply additional information. It was stated that the contractor could supply the board with any additional evidence he had.
14. On July 7, 1949, the successor contracting officer prepared a report which recommended that the appeal of Bo-Jack, from the decision refusing to grant any extension of time under the contract, be denied. This report was forwarded to the Armed Services Board of Contract Appeals on July 11, 1949. The pertinent parts of the report are as follows:
5. Throughout the course of this contract, the contractor has consistently requested extensions of time predicated upon four different reasons, to-wit:
a. A general shortage of cotton drill in the Fall of 1947.
b. Lateness due to the fact that the Government did not award subject contract within the 20 day period set by the contractor, but, on the other hand, requested and received several extensions of time.
c. Refusal of the Government to permit the contractor to manufacture a portion of contract at its plant in Manti, Utah; and
d. Delays by the Inspection Service in approving samples of cotton drill.
6. With reference to the delay on the part of the Government in making the award of subject contract, *604 this matter has been disposed of by Supplemental Agreement, Modification “A”, dated 3 February 1948, previously referred to. This modification was signed and agreed to by the contractor without protest and no appeal was ever taken therefrom.
7. With reference to alleged delays by the Inspection Service, the contractor, in letter dated 29 December 1947, complained that when it received its first consignment of materials, it submitted a sample to the Government through the Government inspector and it took 14 days before the Government tested this sample and reported back to the contractor. By letter dated 31 December 1947, and by previous letter dated 22 December 1947, the contractor was informed that it was its own responsibility to procure specification material, and that the contract specifically provided in Article 5 of the Supplemental Contract Provisions, that the Government had the right to require samples of all component items but that the Government was not required to furnish the results of any examination or test to the contractor, and that the contractor should not hold up production pending report of such examination or test. No appeal was ever taken from the letters of 22 December 1947 and 31 December 1947, respectively.
8. With regal’d to the refusal of the Government to permit the contractor to manufacture a portion of the contract quantity at its plant in Manti, Utah, the facts of record show that request for such permission was first made on or about 15 April 1948, at a time when the contractor was already seriously delinquent. In making its request, the contractor indicated that the need for the Manti, Utah, plant would be for a temporary duration only, and in denying such request the Government pointed out that it entailed additional expenses to the Government such as plant investigation, inspection and transportation costs, among others, which the Government would not assume. The contractor was asked whether it would be willing to assume all such additional costs. The file indicates that no written reply to this inquiry was ever received.
9. As the contract, originally written, called for manufacture at contractor’s plant in Plymouth, Pa., subject contractor had no absolute right to use any other plant. The contracting officer could have permitted or denied permission for production elsewhere. In the absence of any clear understanding that the contractor would assume all excess costs occasioned the Government; in the absence of any proof by the contractor as *605 to tbe advantages to be gained by the Government in permitting the use of the Manti plant, and in view of the contractor’s complaint of shortage of material the decision of the Successor Contracting Officer denying such permission was fair and reasonable and in no wise could be considered as an abuse of discretion.
10. With reference to the contention of the contractor that a serious shortage of cotton drill existed during the Fall of 1947, which hampered the contractor in securing adequate materials with which to manufacture the contract item, it is understood by this office that there was a tight market in cotton drill during this period. It is known that the market eased considerably in the Spring of 1948 though contractor’s difficulties evidently continued through the Fall of 1948. The contractor apparently places its entire case squarely upon the fact that there was a shortage in the cotton drill market. This is not sufficient to bring the case within the excusability provisions of the Delays-Liquidated Damages article. The Board of Contract Appeals has ruled many times that the burden of procuring materials and supplies with which to manufacture the item bid upon is upon the contractor, and in the absence of such unusual and overpowering conditions as to make performance well-nigh impossible, no relief can be granted. The contractor has given us no evidence as to the steps which it took prior to the submission of any bid to assure itself of the availability of cotton drill, its commitments, options, etc., nor the steps it undertook thereafter to again ascertain that needed cloth would be available. Contractor presented no evidence as to what steps it took after the award of subject contract to overcome the alleged shortage and to secure cloth from every available source. Contractor has made a general allegation that it was late in deliveries and requests remission of all liquidated damages. Even if it were to be assumed for the purpose of this Keport that this delay was excusable, contractor has presented no evidence as to the extent of the delay caused by the inability to procure cotton drill. No evidence has been presented as to when the delay started and when the delay terminated, as to quantities of cloth obtainable, and the dates thereof, and as to quantities of cloth necessary to meet contract commitments so that a period of time for such delay can reasonably be established.
15. The Government’s statement of facts and issues involved was filed with the board on August 2, 1949, and the *606 contractor’s attorney, Mr. Schwag, on August 24, 1949, filed its reply. On September 10,1949, Mr. Schwag wrote to the board asking that the case be placed on the suspense docket as Mr. Rose, Bo-Jack’s president, was not at the time in position to furnish needed information.
By order of September 15, 1949, the board granted the request.
16. On October 18,1949, the board granted a Government motion to remove the case from the suspense docket and set it for hearing on December 6, 1949. Notice was sent to Bo-Jack’s attorney by registered mail and a return receipt acknowledged its delivery. He was subsequently advised of the room in which the December 6, 1949, hearing would be held. On November 28, 1949, however, Attorney Schwag wrote the board as follows:
With regard to the above entitled matter which is scheduled for a hearing on December 6, 1949, I must advise that Mr. David Rose, the President and only witness of the Appellant company, was sentenced to serve a term in the Federal Penitentiary for conduct unbecoming a Government contractor.
In view of the above, I don’t see how, from the appellant’s point of view, the hearing can proceed as scheduled.
In view of the circumstance, I herewith again request that the matter be placed in Suspense File pending further developments.
On December 1,1949, in response to the above communication, the board wrote Mr. Schwag that, in view of the length of time the appeal had been pending, the case should proceed as set and that, if necessary, the testimony of Mr. Rose could be taken by deposition.
17. Mr. Schwag advised the board on December 2, 1949, that neither he nor his client would be present at the hearing, that under the rules the matter could proceed ex parte, and that he was requesting leave to take Mr. Rose’s deposition.
18. On December 6, 1949, the hearing was held before the Armed Services Board of Contract Appeals and a transcript of the proceedings is in evidence. Mr. Schwag’s letter advising that neither he nor his client would be present was read to the board as well as his request for a continuance. *607 Government trial counsel opposed any delay that might possibly continue for the five-year term of Mr. Eose’s imprisonment and the presiding officer granted leave to take Eose’s deposition on or before January 31, 1950, unless a showing was made that the period of time provided would not be adequate. Oral testimony was then offered and received on behalf of the Government, but nothing was offered on behalf of the contractor. The recorder of the board wrote to Schwag on December 8, 1949, advising him of the action of the board in granting him until January 31, 1950, to take Eose’s deposition. There is no evidence that any such deposition was ever taken or that any attempt was made to take it.
19. By letter dated December 6, 1949, Mr. Mas Eosenn, Wilkes-Barre, Pennsylvania, wrote the recorder of the board, referring to a telephone conversation of the previous day and enclosing notices of appearance on behalf of himself and Thomas E. Eoberts for the First National Bank of Plymouth, Pennsylvania, indicating intention to file a petition to intervene. This letter was received by the board on December 9. Under date of January 14, 1950, Mr. Eosenn sent his petition to the board and requested to be heard on it and to be afforded opportunity to introduce depositions and proof in support thereof. The petition itself, dated January 9,1950, states in part:
5. That your petitioner is informed that the Bo-Jack Manufacturing Corporation has made an application for a refund of penalties withheld by the United States Government under said contract, and for a striking off of a deficiency assessment made by the Quartermaster Corps, which application is now pending before the Contract Board of Appeals to the above number.
■6. That your petitioner is an interested party in said contract by virtue of the assignment made to it by Bo-Jack Manufacturing Corporation and the monies due it thereunder and desire to appear in said proceedings for the purpose of protecting its rights and interest.
WhbREpoee, your petitioner prays that it may be allowed to intervene as a party claimant in said proceedings.
20. On February 9, 1950, the Government’s trial attorney filed a memorandum in opposition to the petition to inter *608 vene. It is in evidence and, in summary, contends that the bank was not a proper party, that the assignment was only of moneys due or to become due, and that it did not give the bank the rights and obligations of the contractor with respect to performance, extensions of time in which to perform, participation in disputes or prosecution of appeals on disputed questions of fact. It was asserted, further, that the appeal of the contractor, Bo-Jack, raised issues as to the question of whether the contractor’s delays in performance were excusable under the delays-liquidated damages article of the contract and did not raise issues as to entitlement to moneys due or to become due.
The assignee bank’s attorney on April 15, 1950, replied to the Government’s argument, stating in part:
Performance of the contract by Bo-jack Manufacturing Corp., is not in issue at this time. The material required to be produced by it was secured under a repurchase contract without any excess costs to the Government. As a consequence the only matter for determination is the right of the petitioner, the First National Bank of Plymouth, to moneys due it by virtue of the assignment of the foregoing contract.
21. The board rendered its written opinion and decision on July 27, 1950, sustaining the action of the contracting officer and denying the petition to intervene. As to the latter issue, the last paragraph of the opinion was as follows:
It is our understanding of the Petition to Intervene and of the brief filed in support of it that the sole purpose of the petitioner, if permitted to intervene, is to present to the Board matters pertaining to its rights under the assignment to the payment of monies due the appellant and the amount of such payment. In so far as the amount of the payment is concerned, it is not understood that petitioner intends to present any matter pertaining to the right of the Government to assess liquidated damages against the appellant but that at the most its presentation in that respect would be limited to the right of the Government to deduct any damages so assessed against monies otherwise due to appellant for performance under the contract. The only issue presented to the Board by this appeal is concerned with the basic right of the Government to assess liquidated damages against the appellant by reason of alleged de *609 faults in contract performance and the Board’s jurisdiction is limited to this issue on the record before it. It has no jurisdiction to determine the priority of the Government to payment of such claim for liquidated damages as against an assignee of the appellant. As stated above, we understand the Petition to Intervene as seeking to raise the latter issue and to the extent it does the petition is denied. In so ruling the Board is not to be considered as passing upon the right of an assignee to intervene, either before or after a scheduled hearing, for the purpose of presenting evidence on the basic issue raised by a contractor’s appeal involving a dispute arising under the terms of the contract.
The petition of intervention is denied.
The opinion of the board was exhaustive in its treatment of all of the issues raised by the contractor and was agreed to unanimously.
22. Plaintiff filed with the board a petition for rehearing and reconsideration with a request that an amended petition be allowed to be filed if necessary. Plaintiff took the position that it did not intend to confine itself before the board to a limited issue. On August 31, 1950, plaintiff filed a supplemental petition for rehearing and reconsideration with the board and asserted a desire to be permitted “to introduce evidence in support of its claim and on the basic right of the Government to assess liquidated damages against Appellant”. The board denied the motion on October 30, 1950.
23. The petition in this case alleges that the February 14, 1949, decision of the successor contracting officer and the July 27, 1950, decision of the Armed Services Board of Contract Appeals were capricious, arbitrary or so grossly erroneous as necessarily to imply bad faith or that they are not supported by substantial evidence. Plaintiff further avers that if its predecessor had been granted opportunity to intervene it would have presented evidence establishing the right of the contractor to the delays requested and thus preserved the right of the contractor and its assignee to payment for merchandise delivered and the opportunity to complete the contract.
The evidence fails to support plaintiff’s allegations. The decisions of the contracting officer and the board were based on substantial evidence and were not arbitrary, capricious *610 or erroneous. The contractor bad ample opportunity to present evidence to the board but did not do so. In trial of the case before this court, plaintiff was afforded an ample opportunity to present evidence to support its own and the contractor’s contentions asserted in the appeal to the board. The contractor offered no evidence. The plaintiff offered no evidence on the issues other than the record before the board. Both plaintiff and the contractor were represented by counsel, although neither the contractor nor its counsel appeared at the trial, being duly notified thereof, however.
24. The contractor asserted, in seeking from the contracting officer an extension of the performance dates fixed by the contract and in its appeal to the board, that the cotton drill from which the trousers were manufactured was in short supply, that this prevented it from performing on time, and that this situation was an unforeseen condition, entitling it to an enlargement of the performance time. At the trial of the case in this court, the Government offered evidence with respect to the issue of the availability of the cloth, in addition to the evidence offered at the hearing before the board. This evidence established the following facts:
Insofar as Bo-Jack Manufacturing Corporation was concerned, there was no shortage of the supply of the cloth needed to perform its contract with the Government. On October 28,1947, it entered into a contract with Mt. Vernon Woodberry Mills, Inc., a manufacturer of this cloth (a white, cotton drill), for 100,000 yards, for delivery to Bo-Jack in January 1948. On October 81, 1947, it entered into another contract with the same mill for 500,000 yards, to be delivered 100,000 yards per month, February 1948 through June 1948, inclusive. A third contract with this mill was made December 11, 1947, calling for 50,000 yards of the cloth, tobe delivered in July 1948.
The mill was ready, willing and able to supply Bo-Jack with the aforesaid 650,000 yards and with any additional yardage of this cloth needed by the contractor. Furthermore, the mill wanted this business. Its sales representative made several trips to the contractor’s plant in Plymouth, Pennsylvania, and conferred with Bo-Jack’s president in *611 an effort to get contracts for all of the cloth Bo-Jack needed for the trousers it had contracted to produce for the Government.
On December 31, 1947, Bo-Jack entered into a contract with Joseph Bogow and Sons, Pittsburgh, Pennsylvania, whereby it agreed to sell to Bogow 160,000 yards of the same cotton drill that Bo-Jack was using in performing its contract with the Government. The contract called for delivery to Bogow of 20,000 yards of this cloth in January 1948; 25,000 yards per month during the months of February, March, April and May 1948; and 20,000 yards per month during the months of June and July 1948.
25. As previously stated, Bo-Jack’s contract was terminated by defendant October 1,1948, as to 163,658 pairs of the trousers. The Government immediately took steps to advertise for bids for the repurchase of the terminated quantity. On November 30, 1948, it entered into contract W30-280-QM-10836 (O.I. 3751) with Progressive Coat and Apron Manufacturing Company, Philadelphia, for 63,658 pairs. On the same day, it entered into contract W30-280-QM-10837 (O.I. 3752) with Keystone Coat and Apron Manufacturing Corporation, Philadelphia, Pennsylvania, for 100,000 pairs. Both of these contracts, as shown on their face, were repurchase contracts for the quantity on which Bo-Jack had defaulted. Deliveries under these contracts were completed and the contractors paid. The unit price of the trousers procured under each of these repurchase contracts was slightly less than under the contract with Bo-Jack, so there were no excess costs incurred.
26. The garments produced by Bo-Jack were not delivered on time. Liquidated damages in the amount of $38,724.47 were assessed by defendant for these delinquencies, computed from the contract delivery dates to the actual delivery dates, at the rate per garment per day set forth in the contract. Liquidated damages in the amount of $155,080.90 were also assessed as to the terminated portion of the contract, computed from the dates when delivery was required under Bo-Jack’s contract to the actual or promised delivery date under the repurchase contracts, whichever occurred earlier, *612 at the rate per garment per day set forth in the contract. The total assessed liquidated damages amount to $193,805.37.
Of the total assessed for liquidated damages, the Government has recovered, by way of setoff against sums which were otherwise due Bo-Jack, the sum of $54,201.99, leaving an unpaid balance of assessed liquidated damages of $139,-603.38. If the court sustains defendant’s claim against the third party, which the latter did not contest, defendant is entitled to judgment against Bo-Jack Manufacturing Corporation in the net amount of $139,603.38 ($193,805.37 less $54,201.99 already recovered by setoff) and dismissal of plaintiff’s claim.
27. In pretrial proceedings before the Trial Commissioner, a memorandum thereof being filed with the clerk as provided by rule 28 (c) on May 12, 1958, and in a trial memorandum filed by the Commissioner on May 13, 1958, counsel for plaintiff stated that plaintiff would not call any witnesses but would rely upon the administrative record to establish the facts. This record is in evidence. Plaintiff’s counsel also stated that, the facts having been established in full by the administrative record, the plaintiff in its brief would rely only upon the following questions of law:
(a) Whether the decision of the Armed Services Board of Contract Appeals in failing to allow plaintiff’s predecessor, the First National Bank of Plymouth, to intervene as the real party in interest in the case then pending by Bo-Jack Manufacturing Corporation, was so unreasonable, arbitrary and capricious that plaintiff’s predecessor, which had all the monetary interest in the dispute with the Government, was deprived of its property without due process of law.
(b) Whether the refusal by the Armed Services Board of Contract Appeals to grant plaintiff’s predecessor’s request for intervention constituted a denial of plaintiff’s predecessor’s rights under the delays— liquidated damages clause of the contract so as to entirely disallow Government’s claim for any liquidated damages on the grounds that they have failed to comply with the conditions of the contract.
(c) Whether the Government has the right under the delays — liquidated damages provision of the contract to charge for liquidated damages
*613 (1) where the Government terminated the contract and there is no provision in the delays— liquidated damages clause setting forth the sum of liquidated damages or how liquidated damages ought to be computed upon such termination,
(2) where the Government terminated the contract and relet the contract at a lesser price than the price called for in the original contract.
CONCLUSION OK LAV?'
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover and the petition is dismissed.
The court further concludes that defendant is entitled to recover on its claim against the third party, and it is therefore adjudged and ordered that defendant recover of and from the Bo-Jack Manufacturing Corporation the sum of one hundred thirty-nine thousand, sis hundred three dollars and thirty-eight- cents ($139,603.38).