John R. DOMAGALA, d/b/a/ Northeast Transcripts, Plaintiff,

v.

UNITED STATES, Defendant.

No. 92–883C.

United States Court of Federal Claims.

Nov. 30, 1993.

with further in any attorney's fees submission as this case proceeded far too long and advanced far too little.

Jack Danziger, Buffalo, NY, for plaintiff.

Donna C. Maizel, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, with whom were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, James M. Kinsella, Asst. Director, and Jeanne Anderson, of counsel, Department of Veterans Affairs, Washington, DC, for defendant.

## OPINION

MARGOLIS, Judge.

This contract case is before the court on defendant's motion to dismiss and to suspend discovery. The defendant, the United States, argues that the court lacks jurisdiction to hear the plaintiff's claims. According to the defendant, the court must dismiss the plaintiff's complaint because the plaintiff neither alleges facts sufficient to establish the existence of an express or implied contract nor submitted a claim to a contracting officer for final decision. Defendant also contends the equitable relief plaintiff seeks is beyond the court's remedial powers. The plaintiff, John R. Domagala, doing business as Northeast Transcripts, asserts that the court may properly exercise jurisdiction over his claims. The plaintiff contends that the facts show an implied contract between Northeast and the United States, that Northeast submitted a claim to the contracting officer for final decision, and that the request for equitable relief is properly before the court as incidental to a damages claim. After hearing oral argument, and after carefully reviewing the record, the court grants the defendant's motion to dismiss.

## FACTS

Northeast Transcripts ("Northeast") provided medical record transcription services to the Department of Veterans Affairs ("VA") at VA facilities in Buffalo, Batavia and Rochester, New York pursuant to a contract. Northeast's contract with the VA expired in mid 1991. On February 28, 1991, the VA solicited bids to perform the transcription services after Northeast's contract ended. The new contract called for one base year, beginning May 1, 1991, with three renewal option periods.

The contracting officer, Carol Saltarelli ("Saltarelli"), opened the bids for the new contract on March 28, 1991. Northeast's bid was fourth lowest of the five bids Saltarelli received. Saltarelli determined that the lowest bidder, Automation Management Services Co. ("AMSC"), was not responsible. While the Small Business Administration considered whether to issue a Certificate of Competency to AMSC, Saltarelli and Northeast agreed to extend Northeast's transcription services under the old contract until June 30, 1991.

On June 26, 1991, Saltarelli awarded the contract to Buffalo Stenographers ("Buffalo"), the second lowest bidder. Soon thereafter, Saltarelli determined that Buffalo could not meet the contract requirements. Saltarelli obtained authority to conduct an emergency procurement if Buffalo were terminated for default. On July 12, 1991, Saltarelli issued a purchase order to Northeast to perform transcription services to handle the backlog of work created by Buffalo's performance problems. The purchase order was authorized on a sole source basis because it was an emergency procurement. Saltarelli awarded five purchase orders to Northeast for services to be performed between August 11, 1991 and December 31, 1991.

Following Buffalo's termination for default, the VA awarded the contract to the next lowest bidder, Executive Assistance. The VA notified Northeast of this award on December 31, 1991. The VA paid Northeast for all services performed under the five emergency purchase orders at the agreed upon rate.

John R. Domagala ("Domagala") alleges, and the Government denies, that Saltarelli promised Northeast on July 10, 1991 that she would award the new contract to Northeast if Northeast performed the emergency procurements. Domagala further asserts that Northeast demanded execution of the new contract on several occasions and that Saltarelli assured them that they had won the contract, but paperwork delayed the process.

Domagala claims Northeast filed a written protest of the contract award with Saltarelli on January 2, 1992, and a more detailed protest with the VA on January 6, 1992. On February 12, 1992, Northeast filed a letter protesting the contract award to Executive Assistance with the General Accounting Office ("GAO"). Northeast sent copies of this letter to Saltarelli and other VA officials. The Comptroller General dismissed the protest on February 18, 1992 for failure to state a valid ground for protest. This lawsuit followed.

## DISCUSSION

■ The Government moves, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims, to dismiss Domagala's complaint for lack of subject matter jurisdiction. As the plaintiff, Domagala bears the burden of establishing that the court may properly adjudicate this case. *Pasco Enterprises v. United States*, 13 Cl.Ct. 302, 305 (1987). In considering the Government's motion, the court must review the facts in the light most favorable to Domagala. *Id.* at 303.

■ The Court of Federal Claims is a court of special jurisdiction. *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976). The court may not adjudicate claims against the United States unless Congress expressly grants such authority. *Id.* The principal scope of the court's jurisdiction includes "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The court's jurisdiction over contract claims against the Government is, however, limited to those cases where the contractor submits a written claim to a contracting officer for a final decision. 41 U.S.C. § 605(a); *see Paragon Energy Corp. v. United States*, 645 F.2d 966, 227 Ct.Cl. 176, 183–184 (1981). The court may also grant equitable relief if it is associated with and subordinate to a monetary award. 28 U.S.C. § 1491(a)(3); *McEniry v. United States*, 7 Cl.Ct. 622, 625 (1985). Domagala argues that the claims set forth in its complaint allege a contract implied in fact. Thus, in order for Domagala to prevail on the Government's motion to dismiss, the court must find: (1) an implied in fact contract between Northeast and the VA; (2) that Northeast submitted a claim to a contracting officer for final decision; and (3) that Domagala's claims for equitable relief are incidental to a damages claim. Because Domagala cannot prove any set of facts under which the court could find either an implied in fact contract between the parties or submission of a claim to the contracting officer for a final decision, the court dismisses the complaint.

■ The facts contained in Domagala's complaint against the United States cannot establish the existence of an implied in fact contract between Northeast and the VA. An implied in fact contract with the United States requires findings of: mutuality of intent to contract; consideration; lack of ambiguity in offer and acceptance; and actual authority of the Government agent whose conduct is relied upon to bind the Government. *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990).

■ The court must dismiss this cause of action because Saltarelli did not have authority to bind the Government in the manner in which Domagala alleges. Domagala claims Saltarelli *orally* promised to award the contract to Northeast, even though Northeast was not the lowest or next lowest bidder in a sealed bidding procurement. Such conduct exceeds Saltarelli's authority to bind the United States for three reasons. First, under acquisition regulation 48 C.F.R. § 14.407–1(a), a contracting officer may only award a contract in sealed bidding procurement "by written notice." Second, such an award must be "to that responsible bidder whose bid ... will be most advantageous to the Government, considering only price and price-related factors included in the invitation." *Id.* Third, the government cannot be bound by a mere expression of an intent to award a contract. *See Dayton Electronic Products Co. v. United States,* 194 Ct.Cl. 1035, 1971 WL 4137 (1971). Thus, Domagala alleges facts which cannot support a finding of an implied in fact contract between Northeast and the VA. The court also notes that the result in this case is consistent with the legal principle *caveat contractor*—let the contractor beware. As the Supreme Court stated,

> [w]hatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.

*Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 2, 92 L.Ed. 10 (1947).

■ Alternatively, the court dismisses the complaint because Northeast never submitted a claim to the contracting officer for a final decision. *See* 41 U.S.C. § 605(a). A contractor must "submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim" before this court may exercise jurisdiction over the matter. *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987) (citing *Tecom, Inc. v. United States,* 732 F.2d 935, 936–37 (Fed.Cir.1984)). Domagala asserts that the letter Northeast submitted to the GAO, dated February 12, 1992, constituted a claim for a final decision. The court rejects this argument. That letter cannot meet the requirement of 41 U.S.C. § 605(a) because it did not request payment of money in a sum certain. *See* 48 C.F.R. § 33.201 (defining a "claim" as "a written demand ... seeking, as a matter of right, the payment of money in a sum certain ... or other relief arising under or related to the contract.") Rather, the letter only demanded that Northeast "be awarded monetary damages for any loss ... sustained." Even more telling, perhaps, is the fact that Northeast referenced the document as a "protest." *See* Defendant's Motion to Dismiss, App. 81–83. Domagala has not presented, nor has the court discovered, any authority for the proposition that a "protest" may constitute a claim. *Cf. Shook v. United States,* 26 Cl.Ct. 1477, 1489 (1992) (application filed in federal district court not the equivalent of a written claim for a final decision).[1]

### CONCLUSION

The court dismisses the plaintiff's complaint for lack of subject matter jurisdiction because the plaintiff has failed to allege any

---

1. In reaching this decision, the court does not reach the issue of whether Domagala's request for equitable relief is incidental to the damages claim.

facts under which the court could find either an implied in fact contract between the United States and Northeast or submission of a claim to the contracting officer for a final decision. The Clerk will dismiss the complaint. No costs.