Casey V. SINGLETON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 02–712C.

United States Court of Federal Claims.

Dec. 16, 2002.

Casey v. Singleton, pro se, for the plaintiff.

Jonathan P. Sills, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom on the brief were, Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, and Brian M. Simpkin, Assistant Director, for the defendant. Lieutenant Colonel Tara Osborn and Captain David E. Mendelson, United States Army Litigation Division, Arlington, VA, of counsel.

## OPINION

MARGOLIS, Senior Judge.

Plaintiff, Casey V. Singleton, appearing *pro se*, seeks recovery of military back pay from the defendant United States, that he claims is owed to him. The government has moved to dismiss plaintiff's complaint pursuant to United States Court of Federal Claims Rule ("RCFC") 12(b)(1) for lack of subject matter jurisdiction, or in the alternative, pursuant to RCFC 12(b)(6), for failure to state a claim upon which relief can be granted. After consideration of the briefs, defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED. Defendant's motion to dismiss for failure to state a claim is treated as a motion for summary judgment, and is GRANTED.

## FACTS

Singleton was enlisted in the United States Army from July 11, 1990 until January 11, 1997. On November 24, 1995, while he was stationed in Germany, Singleton was arrested. On August 9, 1996, he pled guilty and was sentenced for several crimes, including the rape and murder of his wife, who was the mother of his child. During the period between the initial arrest and the sentencing, Singleton remained incarcerated. Singleton was sentenced to life in confinement, a dishonorable discharge, a reduction in grade, and forfeiture of all pay and allowances. The

convening authority approved the conviction on February 6, 1997.[1]

Plaintiff claims that he was entitled to pay during the period between sentencing and the approval of the conviction by the convening authority. He asserts that he has not received any pay since the end of August 1996, and that, therefore, he is entitled to pay and allowances for the period between September 1996 and February 6, 1997. As evidence, Singleton points to an October 16, 1998 memorandum from the Defense Finance and Accounting Service ("DFAS") regarding the settlement of his account. In that memorandum, DFAS states that the "Soldier last received pay: End of the month AUG96...." Plaintiff contends that this is proof that all pay due to him past that point was unjustly withheld. Defendant counters that Singleton was not only paid for the period in question, but that he was accidently overpaid and still owes the government $1,966.12 for the overpayment.

## DISCUSSION

### I. Subject Matter Jurisdiction

The determination of whether this Court has jurisdiction over the instant case is a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Spirit Leveling Contractors v. United States*, 19 Cl.Ct. 84, 89 (1989). This Court, therefore, will first determine whether the complaint should be dismissed for lack of jurisdiction under RCFC 12(b)(1). As plaintiff, Singleton bears the burden of establishing that the Court may properly adjudicate this case. *Domagala v. United States*, 30 Fed.Cl. 149, 151 (1993), *aff'd*, 39 F.3d 1196, 1994 WL 541614 (Fed.Cir.1994). In considering defendant's motion, the Court must review the facts in a light most favorable to plaintiff. *Id.*

The United States enjoys immunity from suit unless Congress expressly provides otherwise. *Brown v. United States*, 30 Fed.Cl.

227, 229 (1993), *aff'd*, 26 F.3d 139, 1994 WL 169671 (Fed.Cir.1994). The Tucker Act grants the Court of Federal Claims jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). It is well settled, however, that "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The Tucker Act confers jurisdiction only where the claim is "one for money damages against the United States, and the claimant [demonstrates] that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *Id.* at 216–17, 103 S.Ct. 2961 (internal citations and quotations omitted). The Tucker Act does not create a substantive right to recover money damages. *Id.* In order for it to confer jurisdiction, the plaintiff must rely on a separate money-mandating statute. *Id.*

Plaintiff cites 37 U.S.C. § 204(a) as the required money-mandating statute. Defendant acknowledges that this is a money-mandating statute, but proceeds to insist that this Court lacks jurisdiction due to a lack of citation to a money-mandating statute. In *Palmer v. United States*, 168 F.3d 1310 (Fed.Cir.1999), the Federal Circuit addressed this issue exactly. The plaintiff in that case was a former military officer who claimed to be owed military back pay. *Id.* at 1311–12. He relied on 37 U.S.C. § 204(a) as the money-mandating statute required to confer jurisdiction on the Court of Federal Claims under the Tucker Act. *Id.* at 1314. The government believed that the plaintiff was not entitled to pay under the statute

---

1. The plaintiff contends that the convening authority action was insufficient as it erred in its approval. The United States Army Court of Criminal Appeals reviewed this issue, however, and determined that, although there was an error within the action, it did not prejudice Singleton and, therefore, the convening authority's action was valid. The United States Court of Appeals for the Armed Forces affirmed that decision. *United States v. Singleton*, 50 M.J. 345 (1998). This Court will, therefore, treat the convening authority action as valid.

and, therefore, filed a motion to dismiss for lack of subject matter jurisdiction. *Id.* at 1312–13. The Federal Circuit held, in no uncertain terms, that 37 U.S.C. § 204(a) not only qualifies as a money-mandating statute for the purpose of establishing jurisdiction under the Tucker Act, *id.* at 1312–14, but that an assertion by the government that a plaintiff of this sort has no jurisdiction simply because the "case is, in the Government's view, less than meritorious ... reflects a persistent confusion over the meaning of 'jurisdiction' as that term applies to claims against the United States under the Tucker Act." *Id.* at 1312–13. As in *Palmer*, Singleton "alleged that the Government owed him money, a claim based on military service for which he has not been paid." *Id.* at 1313. A well-pleaded complaint, such as this one, is "sufficient to overcome a challenge to subject matter jurisdiction." *Id.* (citing *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 686–88 (Fed.Cir.1992)). Therefore, defendant's RCFC 12(b)(1) motion is DENIED.

## II. Failure to State a Claim

Defendant asserts that, in the alternative, the claim should be dismissed under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. RCFC 12(b)(6) specifically instructs, however, that where such a motion is filed and "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by RCFC 56." RCFC 12(b); *see also Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1250 (Fed.Cir.2000). In the instant case, both the plaintiff and the defendant rely on matters outside the pleading. The Court is not excluding these items and, therefore, will treat the defendant's motion to dismiss for failure to state a claim as a motion for summary judgment.

## III. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one that will affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant for summary judgment bears the burden of demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

## A. The Gorski Decision

Before examining whether Singleton has received all pay to which he is entitled, the Court must first determine during what time period he was entitled to pay. On August 9, 1996, Singleton was sentenced to, among other things, a forfeiture of all pay and allowances. That sentence was approved by the convening authority on February 6, 1997. The issue is whether Singleton was entitled to pay during the period between his sentence and the approval by the convening authority. It is made more complicated by the fact that, during the period between the commission of the crimes of which Singleton was convicted and the sentencing for those crimes, the effective date for pay forfeitures was changed by statute.

In November 1995, the month in which Singleton committed the crimes for which he is incarcerated, the Uniform Code of Military Justice ("UCMJ") provided that forfeitures were to take effect only after the convening authority approved the sentence. *United States v. Gorski*, 47 M.J. 370, 371 (C.A.A.F. 1997) (citing 10 U.S.C. § 857(a)). "In 1996, however, Congress decided that the effective date should be the earlier of the date of the convening authority's action or 14 days after the date sentence was adjudged." *Id.* (citing Art. 57(a)(1), UCMJ, Pub.L. No. 104–106, 110 Stat. 462). This new effective date was to apply to all cases in which a sentence is adjudged by a court-martial on or after April 1, 1996. *Id.* at 372. In the instant case, the sentence was adjudged by a court-martial on August 9, 1996. Singleton's forfeiture was to become effective, therefore, on August 23, 1996, the fourteenth day after the sentence was adjudged.

In November 1997, however, the United States Court of Appeals for the Armed Services held, in *United States v. Gorski*, 47 M.J. at 374, that the application of the new timing rules to forfeiture actions which were the result of criminal acts committed before April 1, 1996, the effective date for the new provisions, was a violation of the *ex post facto* clause of the United States Constitution. *Id.* (citing U.S. CONST. art. I. § 9, cl. 3). The defendant acknowledges that Singleton was a *Gorski* plaintiff. In fact, the defendant contends that DFAS "proactively audited its files to identify" such plaintiffs, and sent them all memoranda similar to the one sent to and submitted by Singleton in this case. In each memorandum, DFAS stated that the account had "been audited due to the Gorski decision" and then included an explanation of the audit that had been undertaken. Singleton contends that the memorandum that he received verifies his claim that he was not paid after August 1996; defendant asserts that the memorandum clearly illustrates that Singleton was paid during the period of time that was covered by *Gorski*. In addition, defendant claims that Singleton was not due payment for the entire time before the convening authority acted.

### B. *Enlistment Expiration*

The defendant claims that Singleton was never, even after *Gorski*, entitled to payment after January 11, 1997, because he was no longer enlisted as of that date. On January 12, 1993, Singleton signed a reenlistment document which served to reenlist him for four more years; therefore, his expiration of term of service ("ETS") date became January 11, 1997. Singleton indicates in his complaint that this was his most recent ETS. The Federal Circuit has stated that "[o]nce [a person's] term of enlistment [has] ended, he no longer [is] entitled to pay under 37 U.S.C. § 204, because he [is] no longer a service member." *James v. Caldera*, 159 F.3d 573, 581 (Fed.Cir.1998). The Department of Defense ("DOD") regulations further specify that "[i]f a member is confined serving court-martial sentence when the enlistment expires, pay and allowances end on the date the enlistment expires unless the sentence is completely overturned or set aside . . . ." De-

partment of Defense Financial Management Regulation ("DoDFMR"), vol. 7A, ch. 03, ¶ 030207(E) (1996). Singleton was confined serving a court-martial sentence on January 11, 1997. That sentence was neither completely overturned nor set aside. Therefore, plaintiff is not, and never was, entitled to any pay for service after January 11, 1997.

### C. *Payment Before Enlistment Expiration*

Defendant acknowledges that Singleton was entitled to payment for the period between August 23, 1996 and January 11, 1997, due to the *Gorski* decision, but asserts that plaintiff has already received payment for that period. Plaintiff contends that he has not been paid since August 23, 1996. The only evidence that Singleton provides to support that contention is the line within the DFAS memorandum, dated October 16, 1998, that states: "Soldier last received pay: End of month AUG96 . . . ." Defendant argues that plaintiff is reading that line out of context and that, actually, the memorandum in its entirety clearly indicates that plaintiff is not due any back pay.

Defendant submitted the pay computation worksheet that accompanied the DFAS memorandum cited by the plaintiff, a statement by a military pay technician who explains Singleton's account, a more readable Pay Computation Worksheet prepared by the same military pay technician who wrote the statement concerning the account, and copies of Singleton's earning statements from September 1996 through February 1997. All of these documents, including the original DFAS memorandum, indicate that Singleton was, in fact, credited the amount of his pay during the *Gorski* period, but that he had a debt that far exceeded his pay.

Singleton was incarcerated on November 24, 1995 and remained incarcerated during the entire period in question. Even though he was incarcerated, he was entitled to pay for the entire period until January 11, 1997. *Supra.* He was not, however, entitled to all of his allowances. In particular, he was not entitled to a basic allowance for subsistence ("BAS"), DoDFMR, vol. 7A, ch. 03, Table 3–

1–6, nor to an overseas cost-of-living allowance ("COLA"). *Id.* Nor was he entitled to COLA for his daughter during this period.[2] Singleton continued to receive BAS and COLA for both himself and for his daughter, however, for almost a year after he was incarcerated. Thus, he was incurring a debt to the government during this time period. Singleton was, in fact, paid through January 11, 1997, but those payments were used to pay off his outstanding debt.

The DFAS memorandum to which the plaintiff cites indicates that the plaintiff remains indebted to the government even after auditing his account to ensure that it is accurate after the *Gorski* decision. The memorandum stated that Singleton remained indebted to the government in the amount of $1,966.12. It also stated that there was a pay computation worksheet attached that explained that conclusion. The plaintiff failed to include the pay computation worksheet when he submitted the memorandum; however, the defendant submitted it. Def.'s Mot. to Dismiss App. 8A. The pay computation worksheet outlines the payments made to Singleton. It illustrates that Singleton was paid up until January 11, 1997, his ETS date. It also shows, however, that he never received a check during that period because of the indebtedness. Singleton's earning statements for that period of time accurately reflect the calculations shown in the pay computation worksheet. Singleton asserts that the statement in the memorandum that he had last received pay at the end of August 1996 is a clear indication that he was not paid since then. When the memorandum is viewed in its entirety, however, it is clear that the statement was merely referring to the last time that DFAS disbursed funds to Singleton's bank account. Defendant has demonstrated that there is an absence of evidence to support plaintiff's case, and that there is no genuine issue of material fact to be decided by this Court.

Plaintiff seeks the production of certain documents pursuant to RCFC 34. The government has supplied the documents plaintiff seeks, or the documents requested are public records. Plaintiff's request is now moot.

### CONCLUSION

For the reasons stated, the Court concludes that the government's motion to dismiss for lack of subject matter jurisdiction is DENIED. The government's motion to dismiss for failure to state a claim is treated as a motion for summary judgment, and is GRANTED. The clerk shall dismiss the complaint and enter judgment for the defendant. No costs.

---

2. Plaintiff argues that he continued to be entitled to COLA for his daughter until the convening authority approved his sentence. To support that assertion, he points to a DOD regulation which states that, "when in confinement as a result of disciplinary action[,] ... the member will be entitled to a COLA ... for the number of dependents who continue to reside in the vicinity of the member's PDS [permanent duty station]." DoDFMR, vol. 7A, ch. 03, ¶ U9100(F)(1)(e) (1994). This provision, however, is not applicable to plaintiff, as his daughter left Germany to return to the United States to live with her grandmother soon after plaintiff killed her mother. He was, therefore, not entitled to COLA for his daughter during that time period.