Homer J. **HOLLAND** and Howard R. **Ross,** Plaintiffs,

v.

The **UNITED STATES,** Defendant.

No. 95–524C.

United States Court of Federal Claims.

March 9, 2004.

Melvin C. Garbow, Arnold & Porter, Washington, D.C., for plaintiffs. Howard N. Cayne, David B. Bergman, Michael A. Johnson, and Brian C. Duffy, Arnold & Porter, Washington, D.C., of counsel.

John H. Roberson, Trial Attorney, William F. Ryan, Assistant Director, Jeanne E. Davidson, Deputy Director, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Stuart E. Schiffer, Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Ashley N. Bailey, Kenneth M. Dintzer, Richard B. Evans, Paul G. Freeborne, and James R. Whitman, Trial Attorneys, United States Department of Justice, Washington, D.C., of counsel.

## OPINION AND ORDER

MILLER, Judge.

In this *Winstar*-related[1] case, defendant, United States ("government"), moved on De-

---

1. *See generally United States v. Winstar Corp.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

cember 2, 2003 to dismiss plaintiffs' breach of contract claims pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. Oral argument was held on February 5, 2004. Thereafter, the Court ordered that the parties engage in supplemental briefing to address and clarify certain issues raised at oral argument. Having now considered the arguments raised by the parties both at oral argument and in their briefs, the Court has concluded that defendant's motion to dismiss (treated, for the reasons discussed below, as a motion for summary judgment) should be GRANTED in part and DENIED in part.

*FACTS*

I. BACKGROUND FACTS

Plaintiffs, Homer J. Holland and Howard R. Ross, filed suit against the government alleging that the enactment of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 (1989) ("FIRREA"), resulted in a breach of their government contracts regarding the Republic Savings; Galva, Home, and Mutual; and Peoria Savings and Loan transactions. *See Holland v. United States*, 57 Fed.Cl. 540 (2003). Plaintiffs have pursued this case in their individual capacities, asserting *their* contract rights. Neither River Valley,[2] the thrift involved in the relevant transactions, nor First Banks, the successor-in-interest to River Valley, is a party to this action. In Judge Horn's July 30, 2003 decision,[3] this court found that plaintiffs, as individuals, were in privity of contract with the government as to the Republic Savings and the Galva, Home, and Mutual transactions, and therefore have standing to assert their breach of contract claims. *Id.* The Court further found that the enactment of FIR-

REA breached the contract rights of the plaintiffs. *Id.*

After the court's July 2003 ruling, the parties, on October 10, 2003, filed a Joint Submission Describing Plaintiffs' Damages Claims ("Joint Submission"). In that submission, plaintiffs represented that they would not seek recovery for restitution of the benefit they conferred on the government under the contracts, nor would they seek to recover damages measured by the hypothetical cost of replacement capital. Plaintiffs additionally elected not to seek damages relating to the government's breach of contract regarding the acquisition of Peoria Savings and Loan. Those representations were incorporated in an October 23, 2003 Order. Also in that Order, based on the parties' October 21, 2003 stipulation of dismissal, the court dismissed, with prejudice, plaintiffs' claims set forth in the following counts of their complaint filed August 8, 1995: Count IV, unjust enrichment; Count V, restitution; Count VI, reformation of contracts; and Counts IX and X, frustration of purpose. Upon order of the court, plaintiffs filed an Amended Complaint on November 12, 2003,[4] to clarify their remaining claims. Plaintiffs' Corrected Amended Complaint alleged breach of contract claims, as well as several constitutional claims. The constitutional claims have been stayed, and are not the subject of this opinion. *See Holland*, 57 Fed.Cl. at 542.

In view of the court's October 23, 2003 Order, the parties' Joint Submission, and plaintiffs' Corrected Amended Complaint, the only remaining damages for breach of contract that plaintiffs seek to recover are what plaintiffs describe as "expectancy damages," or, in the alternative, what they describe as "lost value" damages. Defendant moved to dismiss plaintiffs' claims for both categories of damages on the ground that plaintiffs are

---

2. The court's July 30, 2003 opinion describes two River Valley entities: River Valley Savings Bank, F.S.B. of Peoria, Illinois, and River Valley Savings Bank, a state-chartered savings bank of Rock Falls, Illinois. *See Holland*, 57 Fed.Cl. 540. These two entities merged in 1991 to create a third River Valley entity. The parties, however, have used the term "River Valley" to refer collectively to all three River Valley entities. Accordingly, the Court will do likewise.

3. This case was re-assigned to Judge G. Miller in January 2004.

4. On November 25, 2003 plaintiffs sought leave to file a Corrected Amended Complaint in order to correct a mistaken cross-reference and some minor typographical errors. The Corrected Amended Complaint was filed on December 9, 2003.

not entitled, as a matter of law, to recover those damages directly. Defendant asserts that Holland and Ross, in their individual capacities, are not entitled to recover damages incurred by River Valley.

## II. PLAINTIFFS' DAMAGES CLAIMS

Plaintiffs' claim for so-called "expectancy damages" consists of three distinct components. Under this heading, plaintiffs first seek lost profits from 1990–1994, in the amount of $22.959 million.[5] Joint Submission at 5. As plaintiffs state in the parties' Joint Submission, the amount claimed under this theory represents "the profits that River Valley would have generated" but for the breach, and "the profits that Holland and Ross would have achieved through River Valley" but for the breach. Joint Submission at 6.

The second component of plaintiffs' claim for expectancy damages consists of additional amounts that First Banks, which acquired River Valley, would have paid Holland and Ross for their stock in River Valley absent the government breach. Plaintiffs estimate this amount to be $9.047 million. Joint Submission at 8. The basis of this aspect of plaintiffs' claim is that as a result of the government's breach, *River Valley* was less valuable than it would have been absent the breach. First Banks, therefore, was able to purchase River Valley at a lower price, *i.e.,* First Banks was able to buy the stock of Holland and Ross in River Valley at a reduced price per share.

Lastly under expectancy damages, plaintiffs claim $10.52 million in costs that the government breach caused Holland and Ross to incur in connection with their acquisition of San Antonio Federal Savings Bank ("SAFSB"). Joint Submission at 3. Because of the government's breach, Holland and Ross contend, they were not able to merge SAFSB with River Valley, although they were able to acquire SAFSB on a stand-alone basis. As a result, plaintiffs contend, they suffered damages attributable to: 1) their inability to reduce SAFSB's income tax liability by using River Valley's Net Operating Losses ("NOLs") to offset SAFSB's income; 2) extra administrative expense incurred by River Valley and SAFSB as a result of the need to administer two separate thrifts instead of a combined operation; and 3) additional interest expense incurred by plaintiffs to finance the purchase of SAFSB.

Plaintiffs alternatively seek so-called "lost value" damages. Plaintiffs describe these damages as "the breach-induced decline in value of their ownership of River Valley, measured near the time of the breach." Joint Submission at 10. Plaintiffs estimate this "aggregated loss in the equity value of their River Valley thrifts" at approximately $20,924,229. Joint Submission at 10.

## DISCUSSION

### I. STANDARD OF REVIEW FOR MOTION TO DISMISS

Dismissal under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate when the facts as alleged in the complaint do not entitle the plaintiff to a legal remedy. *New York Life Ins. Co. v. United States,* 190 F.3d 1372, 1377 (Fed.Cir.1999). In reviewing a motion to dismiss, the court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998). The case may be properly dismissed, however, if plaintiff "can prove no set of facts in support of his claim that would entitle him to relief." *Southfork Sys., Inc. v. United States,* 141 F.3d 1124, 1131 (Fed.Cir. 1998); *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir.2000). RCFC 12(b)(6) specifically instructs, however, that where such a motion is filed and "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by RCFC 56." RCFC 12(b); *see also Singleton v. United States,* 54 Fed.Cl. 689, 691 (2002); *Rotec Indus., Inc. v. Mitsubishi Corp.,* 215 F.3d 1246, 1250 (Fed.Cir.

---

5. The Court is relying on the damages calculations included in the parties' Joint Submission. The parties continue to revise their expert reports. To the extent that the actual damages calculations have since changed, the Court's opinion does not reflect those revised amounts.

2000). In the instant case, both plaintiffs and defendant rely on matters outside the pleadings. The Court is not excluding these items and, therefore, will treat defendant's motion to dismiss for failure to state a claim as a motion for summary judgment.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the. pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one that will affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant for summary judgment bears the burden of demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

## III. PLAINTIFFS' DAMAGES CLAIMS

### A. Plaintiffs Are Not Entitled As a Matter of Law To Recover Most of What They Describe as Their Expectancy Damages

Defendant contends that plaintiffs' expectancy damages claims are actually claims belonging to the thrift, and accordingly, any recovery to the plaintiffs must flow through River Valley. The Court agrees, with one exception. Plaintiffs postulate that because they are parties to the breached contract, *i.e.*, they are in privity of contract with the government, and because they were the sole owners of River Valley before the breach, they are entitled to recover such damages directly. Plaintiffs, however, have not cited a single case that the Court regards as authority for the proposition that they are entitled to direct recovery of most of what they describe as expectancy damages. Regardless of the situation in which plaintiffs find themselves, the Court cannot overlook basic principles of corporate law. *Statesman Sav. Holding Corp. v. United States*, 41 Fed.Cl. 1, 16 (1998).

The law on what damages shareholder-plaintiffs may recover in a direct, rather than derivative, action is well developed in this court. *See Statesman*, 41 Fed.Cl. 1; *La Van v. United States*, 56 Fed.Cl. 580 (2003); *Hometown Financial, Inc. v. United States*, 56 Fed.Cl. 477 (2003). Plaintiffs argue that the cited cases are distinguishable because they involved the FDIC, whereas in the case at bar the thrift survived and no receiver was ever appointed. The Court disagrees. The existence of a receivership was not dispositive in *Statesman*, *La Van*, and *Hometown*. *See id.* The involvement of FDIC in those cases simply highlighted one of the many problems inherent in disregarding the corporate form. Because of the similarity between the damages sought by Holland and Ross and by the plaintiffs in *Statesman*, *La Van*, and *Hometown*, the government, and this Court, properly rely on those well-reasoned decisions.

■ Ordinarily a cause of action arising from an injury to a corporation belongs solely to the corporation, even though the injury may have also caused the shareholders to have suffered a diminution in the value of their stock. *La Van*, 56 Fed.Cl. at 585 (citing 12B Fletcher Cyclopedia of the Law or Private Corp. § 5913 (perm.ed., rev.vol. 2000)); *Statesman*, 41 Fed.Cl. at 16; *see also Hometown*, 56 Fed.Cl. at 486. "A suit for damages arising from an injury to the corporation can only be brought by the corporation itself or by a shareholder derivatively if the corporation fails to act ... since only the corporation has an action for wrongs committed against it." *Gaff v. FDIC*, 814 F.2d 311, 315 (6th Cir.1987). In this connection, the courts have held that "the diminution in value of a stockholder's investment is a concomitant of the corporate injuries resulting in lost profits. *A fortiori*, any redress obtained by the corporations would run to the benefit of their stockholders, and to permit the latter to proceed with those claims would permit a double recovery." *La Van*, 56 Fed.Cl. at 585 (citing *W. Clay Jackson Enters., Inc. v. Greyhound Leasing & Fin. Corp.*, 463 F.Supp. 666, 671 (D.P.R.1979)); *Hometown*, 56 Fed.Cl. at 486.

■ Courts have consistently held that shareholders lack standing to sue in their individual capacities where their losses from the alleged injury to the corporation amount to nothing more than a diminution in the value of their stock or a loss of dividends. *Hometown,* 56 Fed.Cl. at 486. Diminution in the value of a shareholder's corporate stock is generally not recognized as the type of direct, personal injury that is necessary to sustain a cause of action by a shareholder directly for wrongs done to the corporation. *Id.* (citing *Gaff,* 814 F.2d at 315). A diminution in the value of corporate stock resulting from some depletion of or injury to corporate assets is a direct injury only to the corporation; it is an indirect or incidental injury to an individual shareholder. *Id.*

■ In attempting to justify their entitlement to what they describe as expectancy damages, plaintiffs assert that they are entitled to "the benefit of the bargain." In doing so, however, they ignore the fact that the benefit to Holland and Ross would have flowed through the thrift. Like the plaintiffs in *Hometown,* the only way that plaintiffs may have suffered from a loss of profits by the thrift is through a diminution in the value of their stock or through a loss of dividends from the thrift. 56 Fed.Cl. at 486. The cases cited make clear that shareholders cannot recover such losses in a direct action against the breaching party. Plaintiffs' attempt "to directly recover expectancy damages based on what [River Valley] would have allegedly earned is nothing more than an attempt to ignore the separate corporate existence of the thrift, and take for themselves what, if proven, rightfully belongs to [River Valley]." *Id.*

Plaintiffs themselves characterize their lost profits claim as being derivative of harm done to River Valley.[6] The same is true for plaintiffs' claim for the difference between what First Banks paid for River Valley and what it would have paid absent the government's breach. That claim is premised on the notion that River Valley would have been worth more, and therefore, the stock of Holland and Ross would have been more valuable at the time of sale to First Banks. As discussed above, individual shareholders cannot bring a direct action for such damages.

■ Additionally, most of the damages claimed in connection with the SAFSB transaction are also derivative. With respect to the tax benefit of using River Valley's NOLs to offset income from SAFSB, that benefit would have flowed to SAFSB. SAFSB would have had a lower tax liability, which in turn would have saved it money. That money would potentially have been available for distribution to shareholders as dividends. Like the other claims, the harm here was to a corporation, SAFSB. Holland and Ross were harmed only indirectly. The same analysis applies to the excess administrative expense to River Valley and SAFSB in having to administer two separate thrifts instead of one combined corporation. Since the "benefit of the bargain" would have flowed to Holland and Ross through the corporate entities, for the reasons discussed above, so too must damages.

Plaintiffs emphasize, and defendant concedes, that this court found that plaintiffs were in privity of contract with the government in the Republic and Galva, Home, and Mutual transactions.[7] *See Holland,* 57 Fed. Cl. 540. Defendant correctly argues, however, that being in privity of contract still only entitles plaintiffs to certain damages. *See La Van,* 56 Fed.Cl. 580 (distinguishing between plaintiffs' entitlement to restitution for their initial investment and their lack of standing to pursue their claims for loss of incremental stock value). In *La Van,* this court found that plaintiffs in the same position as Holland and Ross were not entitled to direct recovery of such damages: "Here, it is plain from the undisputed facts that the breach of contract caused by the enactment

---

**6.** Plaintiffs state that they seek to recover as breach of contract damages "the profits that River Valley would have generated" and "the profits that Holland and Ross would have achieved through River Valley." Joint Submission at 6.

**7.** While defendant agrees that the court *found* privity in this case, at oral argument it noted its disagreement with that ruling and does not concede that privity *exists* between Holland and Ross and the government in these transactions.

of FIRREA resulted in an injury to Centry, which then derivatively harmed the plaintiffs. The fact that the plaintiffs were parties to the contract with FHLBB does not alter this result." 56 Fed.Cl. at 586. Similarly, in *Statesman*, which is factually similar to the case at bar, this court held that shareholder-plaintiffs who were actual signatories to the contract at issue were not entitled to direct recovery of expectancy damages for the thrift's losses. 41 Fed.Cl. at 16; *see also Hometown*, 56 Fed.Cl. at 486–87 (discussing *Statesman*, 41 Fed.Cl. at 16).

Plaintiffs next urge the Court to disregard the corporate form because plaintiffs were the sole owners of River Valley, the thrift was never in receivership, and there are no creditors who would be harmed.[8] To award plaintiffs what they describe as expectancy damages, however, would circumvent the purpose of creating a corporation. As in *Statesman*, "plaintiffs are in essence claiming only the benefits of corporate status, in that they seek to recover the corporation's lost profits without incurring directly any of the corporation's liabilities. A corporation cannot be used indiscriminately as both a sword and as a shield." 41 Fed.Cl. at 16 (citing *Alford v. Frontier Enters.*, 599 F.2d 483, 484 (1st Cir.1979)). Because plaintiffs have no obligation to satisfy any of River Valley's creditors, they are not entitled to recover the corporation's profits directly. *Statesman*, 41 Fed.Cl. at 16.

Plaintiffs rely heavily on *Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348 (Fed.Cir.2001). *Bluebonnet*, however, is inapposite to most of plaintiffs' claimed expectancy damages. The Federal Circuit in *Bluebonnet*, used the term "expectancy damages," but, for the most part, the court was not addressing the same type of expectancy damages discussed above and at issue in this case. *Id.* In *Bluebonnet*, the plaintiff, Mr. Fail, claimed expectancy damages consisting of additional interest on indebtedness and higher fees paid to lenders that he incurred in financing Bluebonnet. 47 Fed.Cl. 156, 167 (2000). Mr. Fail was suing for damages that

he sustained personally, not for lost profits of Bluebonnet or the decrease in the value of his Bluebonnet stock.

If the injury to the shareholder results from the breach of a contractual duty owed to the shareholder and does not stem from injury to the corporation, courts have held that the shareholder's injury is separate and distinct and may be the basis for a direct action by the shareholder against the breaching party. *La Van*, 56 Fed.Cl. at 585. Mr. Fail suffered an injury distinct from that of Bluebonnet. The damages he was seeking were personal to him, and not simply based on the benefits that would have flowed to him as a shareholder. *See Bluebonnet*, 266 F.3d 1348.

Plaintiffs' only claim for expectancy damages that is in any way analogous to Mr. Fail's claim in *Bluebonnet* is their assertion that because of the government's breach, they were required to borrow money from an unrelated third party at higher interest rates than they otherwise would have paid to finance the acquisition of SAFSB. Joint Submission at 5. Because the increased cost of borrowing money is an injury separate and distinct from the injury to River Valley, Holland and Ross have standing to directly pursue such damages in this action.

**B. Plaintiffs Are Not Entitled As a Matter of Law To Recover What They Describe as Their Lost Value Damages**

■ As an alternative to expectancy damages, plaintiffs seek to recover the "breach-induced decline in value of their ownership of River Valley, measured near the time of the breach." Joint Submission at 10. For all the reasons discussed above, plaintiffs are not entitled as a matter of law to pursue this claim directly. Like their expectancy damages claim, this "lost value" results from damages incurred by River Valley, and the claim to recover those damages belongs to River Valley, not Holland and Ross. *See Statesman*, 41 Fed.Cl. at 16; *La Van*, 56 Fed.Cl. at 585; *Hometown*, 56 Fed.Cl. at 486–87.

---

8. The government contests that there are no creditors, but maintains that even if there are no creditors, Holland and Ross still cannot recover

directly for what plaintiffs describe as expectancy and lost value damages.

## IV. ASSIGNMENT OF RIVER VALLEY'S CLAIMS TO HOLLAND AND ROSS; POSSIBLE JOINDER OF FIRST BANKS

Plaintiffs argue that First Banks assigned to them River Valley's claims against the government relating to the contracts at issue in this case. Plaintiffs contend, therefore, that as assignees, they are entitled to pursue River Valley's claims against the government and recover the damages that they seek, regardless of whether in their capacities as shareholders they are entitled to recover such damages in a direct action against the government. Defendant responds that plaintiffs have waived this argument by not asserting it sooner. The issue of waiver or judicial estoppel regarding the alleged assignment of River Valley's claims to Holland and Ross is not yet ripe for review, because plaintiffs have not yet complied with the procedural requirements necessary for them to assert River Valley's claims.

Plaintiffs contend that there are several procedural mechanisms by which they may either assert, as assignees, River Valley's claims, or alternatively, join First Banks as a party to this case. For example, plaintiffs suggest the possibility of amending their complaint pursuant to RCFC 15, compelling First Banks to join this case pursuant to RCFC 19, or persuading First Banks to seek leave to enter this action pursuant to RCFC 17(a). Plaintiffs maintain, however, that none of those procedures is necessary. The Court disagrees. As discussed above, plaintiffs are not legally entitled to most of the damages they seek. In order to recover those damages, plaintiffs must either amend their complaint or join First Banks as a party to this action. The parties have submitted several filings in which they address some of the issues that would be raised should plaintiffs take such actions. The propriety of plaintiffs' potential actions, however, is not ripe for consideration by this Court at this time because plaintiffs neither have sought leave to amend their complaint, nor have they attempted to join First Banks as a party.

### CONCLUSION

Based on the foregoing, defendant's Motion to Dismiss, treated as a motion for summary judgment, is GRANTED as to plaintiffs' claims for the following elements of damages allegedly caused by the government's breach: (1) lost profits that River Valley would have generated and that Holland and Ross would have achieved through River Valley; (2) additional amounts that First Banks would have paid to Holland and Ross to acquire their stock in River Valley; (3) increased administrative expenses of River Valley and SAFSB due to the necessity of operating them as separate entities; (4) increased tax liability of SAFSB caused by its inability to use River Valley's NOLs to offset SAFSB's earnings; and (5) decline in value of Holland and Ross' equity interest in River Valley. Defendant's Motion is DENIED with respect to plaintiffs' claim for damages due to higher interest rates that Holland and Ross allege that they were required to pay in connection with their acquisition of SAFSB as a result of the government's breach.

The Court further ORDERS that plaintiffs shall have until March 30, 2004 either to file a motion for leave to amend their complaint to seek to assert, as assignees, claims of River Valley or to attempt to join First Banks as a party. Additionally, the Court will permit First Banks, by March 30, 2004, to seek leave to join as a plaintiff in this case pursuant to RCFC 17(a). Plaintiffs are ORDERED to inform First Banks of this Order. If plaintiffs or First Banks do not act by March 30, 2004, or if the Court denies plaintiffs' motion for leave to amend their complaint or precludes First Banks from joining this action, then the case will proceed on the sole remaining claim for damages, i.e., those damages attributable to higher interest rates that plaintiffs were required to pay in connection with their acquisition of SAFSB as a result of the government's breach.

IT IS SO ORDERED.