## NATIONAL AUSTRALIA BANK, Plaintiff,

v.

### The UNITED STATES, Defendant.

No. 99–690C.

United States Court of Federal Claims.

Oct. 11, 2002.

Paul Martin Wolff and Ryan T. Scarborough, Washington, D.C., for the plaintiffs.

Brian L. Owsley, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, for defendant.

## ORDER

BRUGGINK, Judge.

Pending are defendant's motion to compel, plaintiffs' joint motion to quash subpoenas for Rule 30(b)(6) depositions, and plaintiffs' motion to substitute party pursuant to RCFC 25. For the reasons set out below, plaintiffs' motion to quash is granted, defendant's motion to compel is denied, and plaintiffs' motion to substitute National Australia Bank is granted.

In their motion to substitute party pursuant to Rule 25(c), plaintiffs Michigan National Bank and Michigan National Corporation seek to have National Australia Bank substituted. Plaintiffs were wholly owned subsidiaries of National Australia Bank until April 2001. On March 30, 2001, National Australia Bank declared a dividend in-kind, which resulted in the sale of Michigan National Bank and Michigan National Corporation to ABN AMRO North America, Inc. ("ABN AMRO"). When plaintiffs were sold to ABN AMRO, National Australia Bank retained all rights and interests in this proceeding through an assignment agreement.

Defendant argues that plaintiffs' motion is barred by the six year statute of limitations, because plaintiffs have been wholly owned by National Australia Bank since February 1995. This argument fails on two accounts.

First, the pertinent transfer is not the purchase of plaintiffs by National Australia Bank. Instead, the relevant date is that of the dividend in-kind sale of the named plaintiffs on March 30, 2001. Rule 25(c) provides for substitution of a party for "any transfer of interest." The pertinent transfer of interest occurred when National Australia Bank formally retained this suit and sold the named plaintiffs, Michigan National Bank and Michigan National Corporation, to ABN AMRO.

Second, defendant argues that National Australia Bank should have been named in the original suit filed in 1999. The complaint, however, only advanced a claim of the subsidiaries, not the parent. For the same reason, defendant's argument that National Australia Bank lacks privity with the government, and so cannot be substituted as a party under Rule 25(c), is off the mark. National Australia Bank is not asserting standing based on its status as a shareholder in Michigan National Bank and Michigan National Corporation. Instead, National Australia Bank merely retained a claim, brought by its wholly owned subsidiaries, when those same subsidiaries were sold. Michigan National Bank and Michigan National Corporation had privity with the government, and it is their standing which National Australia Bank now asserts.

National Australia Bank's retention of the claims of Michigan National Bank and Michigan National Corporation does not run afoul of the Anti–Assignment Act, 31 U.S.C. § 3727. Instead, this situation is analogous to those in which a claim is transferred to a different corporation by virtue of a merger or sale, an event which does not trigger the Anti–Assignment Act. *Kingan & Co. v. United States,* 71 Ct.Cl. 19, 29, 44 F.2d 447 (1930). Here, a parent company retains the claim of a wholly owned subsidiary. National Austra-

lia Bank could have attempted to collapse the corporate structures of Michigan National Bank and Michigan National Corporation into its own, in which case this claim would have transferred to National Australia Bank by operation of law. The Anti–Assignment Act is not offended by National Australia Bank choosing to refrain from collapsing its corporate structure and merely retaining the claim.

■■■ Our predecessor court held that in such situations the Anti–Assignment Act should not be mechanically applied. *Rel–Reeves, Inc. v. United States,* 221 Ct.Cl. 263, 273, 606 F.2d 949 (1979). The Act has long been cited as having three main purposes: to prevent trafficking in claims by those who could use them to improperly influence officers of the government, to prevent multiple payment of claims by the government and allow the government to deal solely with the original claimant, and to preserve the government's defenses against the transferee. *United States v. Shannon,* 342 U.S. 288, 291–292, 72 S.Ct. 281, 96 L.Ed. 321 (1952), *MDS Assocs., Ltd. Pshp. v. United States,* 31 Fed. Cl. 389, 393 (1994). The effect of National Australia Bank retaining plaintiffs' claims does not implicate any of these purposes. There is no suggestion that National Australia Bank has begun to purchase claims against the government in the hopes that it might wield undue influence. Second, the government has, for all practical purposes, only dealt with one set of plaintiffs in this matter. By allowing National Australia Bank to retain plaintiffs' claim, the government has not become subject to multiple parties. Finally, the government loses none of its defenses through the substitution, because National Australia Bank continues to assert the claim of Michigan National Bank and Michigan National Corporation.

Plaintiffs' joint motion to quash subpoenas for Rule 30(b)(6) depositions and defendant's motion to compel are thereby also resolved. The fundamental premise of these motions is the same—that the Anti–Assignment Act might be applicable. As discussed above, however, the assignment agreement allowing National Australia Bank to retain this claim does not violate the Anti–Assignment Act.

Additional discovery on that question is thus not relevant to the claim before us.

Accordingly, plaintiffs motion to substitute is granted, plaintiffs' motion to quash is granted and defendant's motion to compel is denied without prejudice. Defendant may once again request the information outlined in its motion to the extent that discovery on valuation becomes relevant. The clerk is directed to change the court's docket as reflected in the above caption.