Homer J. HOLLAND, Howard R. Ross, and First Banks, Inc., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 95–524C.

United States Court of Federal Claims.

Oct. 5, 2004.

they submitted with their joint motion. Defendant timely filed an opposition to the joint motion on April 12, 2004. Plaintiffs and First Banks filed their reply on April 20, 2004. The Court heard oral argument on the joint motion on April 29, 2004. After oral argument, the parties engaged in supplemental briefing. For the reasons discussed below, the joint motion of plaintiffs and First Banks is GRANTED in part and DENIED in part.

Melvin C. Garbow, Arnold & Porter, Washington, D.C., for plaintiffs Holland and Ross and for proposed plaintiff/intervenor First Banks, Inc. Donald J. Gunn, Jr., Gunn and Gunn, St. Louis, Missouri, of counsel. David B. Bergman, Arnold & Porter, Washington, D.C., argued on behalf of plaintiffs and First Banks, Inc.

John H. Roberson, Trial Attorney, William F. Ryan, Assistant Director, Jeanne E. Davidson, Deputy Director, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Stuart E. Schiffer, Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Ashley N. Bailey, Kenneth M. Dintzer, Richard B. Evans, William G. Kanellis, Brian L. Owsley, and James R. Whitman, Trial Attorneys, United States Department of Justice, Washington, D.C., of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

Following the Court's March 9, 2004 ruling in this *Winstar*-related[1] case, on March 24, 2004, plaintiffs and third-party First Banks, Inc. ("First Banks") filed a joint motion to join First Banks as a plaintiff and for leave to file a second amended complaint, which

## FACTS

Plaintiffs, Homer J. Holland and Howard R. Ross, filed suit against the United States ("Government") alleging that the enactment of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 (1989) ("FIRREA"), resulted in a breach of their government contracts regarding the Republic Savings; Galva, Home, and Mutual; and Peoria Savings and Loan transactions. *See Holland v. United States,* 57 Fed.Cl. 540 (2003). Plaintiffs pursued this case in their individual capacities, asserting what they believed were their contract rights. Neither River Valley,[2] the thrift involved in the relevant transactions, nor First Banks, the successor-in-interest to River Valley, were a party to this action. In Judge Horn's July 30, 2003 decision,[3] the Court found that plaintiffs, as individuals, were in privity of contract with the Government as to the Republic Savings and the Galva, Home, and Mutual transactions, and therefore have standing to assert their breach of contract claims. *Id.* The Court further found that the enactment of FIRREA breached the contract rights of plaintiffs.[4] *Id.*

---

1. *See generally United States v. Winstar Corp.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

2. The court's July 30, 2003 opinion describes two River Valley entities: River Valley Savings Bank, F.S.B. of Peoria, Illinois, and River Valley Savings Bank, a state-chartered savings bank of Rock Falls, Illinois. *See Holland,* 57 Fed.Cl. 540. These two entities merged in 1991 to create a third River Valley entity. Joint Stipulation of Facts (Dec. 31, 2003) ¶ 329. The parties, howev-

er, have used the term "River Valley" to refer collectively to all three River Valley entities. Accordingly, the Court will do likewise.

3. This case was re-assigned to Judge G. Miller in January 2004.

4. Plaintiffs subsequently elected not to seek damages relating to the government's breach of contract regarding the acquisition of Peoria Savings and Loan. *Holland,* 59 Fed.Cl. at 737.

As the Court and the parties prepared for the damages phase of this litigation, the Government moved on December 2, 2003, to dismiss plaintiffs' breach of contract claims pursuant to United States Court of Federal Claims Rule ("RCFC") 12(b)(6) for failure to state a claim upon which relief can be granted. In an Opinion and Order dated March 9, 2004, this Court granted in part the Government's motion and held that the majority of the damages plaintiffs sought, in the form of expectancy damages and lost value, were "damages incurred by River Valley, and the claim to recover those damages belongs to River Valley, not Holland and Ross." *Holland v. United States*, 59 Fed.Cl. 735, 741 (2004).

During the February 5, 2004 oral argument on defendant's motion to dismiss, the parties and the Court focused for the first time on plaintiffs' assertion that First Banks (the successor-in-interest to River Valley[5]) had assigned River Valley's claims against the Government to them. Transcript of Proceedings, Holland and Ross v. United States, 95–524C at 42, 55 (Fed.Cl. Feb. 18, 2004) ("Feb. 18, 2004 Tr."). Plaintiffs sought to avoid dismissal on the ground that if the Court determined that they could not proceed in their individual capacities, they could proceed as assignees of First Banks. Plaintiffs also urged the proposition that to the extent the Court found that First Banks was the proper plaintiff, First Banks could be joined as a plaintiff, thereby allowing the case to proceed. At the Court's request, the parties engaged in supplemental briefing of those issues. Ultimately, the Court determined that the issues were not ripe for consideration because there was no pending motion from plaintiffs or First Banks seeking to amend the complaint or join First Banks as a party. *Holland*, 59 Fed.Cl. at 742. As part of the March 9, 2004 Order, however, the Court provided that plaintiffs had until March 30, 2004 to either file a motion for leave to amend their complaint to seek to assert, as assignees, claims of River Valley or to attempt to join First Banks as a party. Additionally, the Court permitted First Banks to seek leave to join as a plaintiff in

this case pursuant to RCFC 17(a). *Id.* Plaintiffs and First Banks filed their joint motion on March 24, 2004.

## DISCUSSION

### I. Holland and Ross are Prohibited From Amending Their Complaint To Assert Claims as Assignees of River Valley

Plaintiffs seek to amend their complaint, pursuant to RCFC 15, to assert that the claims of First Banks, as successor-in-interest to River Valley, were assigned to them. Joint Mot. of Plaintiffs and First Banks to Join First Banks and for Leave to File the Second Am. Compl. ("Pls. Mot.") at 18–20. Defendant has argued that judicial estoppel bars plaintiffs from asserting a claim as assignees of River Valley's claims from First Banks. Def. Opp. to the Joint Mot. of Pls. and First Banks to Join First Banks and for Leave to File the Second Am. Compl. ("Def. Opp.") at 18–24. The doctrine of "judicial estoppel is designed to prevent the perversion of the judicial process, and, as such, is intended to protect the courts rather than the litigants." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed.Cir.1996). The Court declines to invoke judicial estoppel, and will instead consider on the merits plaintiffs' claim that they are entitled to amend their complaint to assert claims as assignees of River Valley.

RCFC 15(a) provides that a party may amend the party's pleading by leave of court, and "leave shall be freely given when justice so requires." In *Foman v. Davis*, the Supreme Court set forth factors that a court may rely on to deny leave to amend. 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). These factors include futility of the amendment, undue delay, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party. *Id.* at 182, 83 S.Ct. 227. For the reasons discussed below, plaintiffs' motion to amend in order to assert claims as assignees is denied as futile.

---

5. *See* Joint Stipulation of Facts (Dec. 31, 2003) ¶¶ 370–85 (describing transactions by which

First Banks succeeded to the interests of the acquired thrifts).

## A. *The Letter Agreement*

Plaintiffs proffer a letter dated January 4, 1999, entitled, "Assignment of RVHI Contingent Claims," as the document that purports to assign River Valley's claims to Holland and Ross. Def. Opp. at Ex. 2. This letter agreement is signed by Messrs. Holland and Ross and a representative of First Banks. Though described by the parties as a "letter agreement," the document is a contract between Messrs. Holland and Ross and First Banks.

The Letter Agreement recites that:

you [First Banks] have also agreed that you will pay to us [Holland and Ross] any sum of money received from the Agencies by any of you, or RVHI or RVSB or their respective successors with respect to any of the Corporate Claims, net of any additional federal, state or local taxes due as a result of the receipt by any of you, or RVHI or RVSB or their respective successors of such sum of money ("Tax Liability"). You also agree that neither you, nor any of RVHI, RVSB or their respective successors will assert any right to any Corporate Claim in any court or other forum without first receiving our written consent.

Letter Agreement at 2. The letter continues: "To further effectuate this agreement, you agree that after the Closing you will execute, a written assignment to us of the Corporate Claims net of that amount necessary, if any, to satisfy the Tax Liability in connection herewith." *Id.*

The parties strongly disagree as to how the Letter Agreement should be interpreted. Defendant contends that the Agreement, by its terms, assigns to Messrs. Holland and Ross only the proceeds of any corporate claims, and not the claims themselves. Plaintiffs assert that the plain language of the Letter Agreement assigns to Messrs. Holland and Ross the corporate claims in their entirety (less, of course, the amount necessary to satisfy any tax liability). There has not been discovery on this issue. The Court, however, does not need to determine the legal effect of the Letter Agreement in order to resolve plaintiffs' pending motion, because plaintiffs could not pursue a claim as assignees of First Banks under either plaintiffs' or defendant's interpretation of the Letter Agreement.

## B. *If the Letter Agreement Assigned Only the Proceeds, Plaintiffs Lack Standing To Assert The Corporate Claims as Assignees of First Banks*

 If the Letter Agreement assigned only the proceeds of the corporate claim to Messrs. Holland and Ross, then plaintiffs cannot amend their complaint to assert those claims. This Court has concluded in other *Winstar*-related cases that the assignment of the proceeds of a claim is not an assignment of the claim itself and that in such a situation the "assignee has no claim against the government." *First Fed. Sav. & Loan Ass'n of Rochester v. United States,* 58 Fed.Cl. 139, 157–58 (2003). This follows from long-standing authority in the Federal Circuit holding that the assignees of the proceeds pursuant to a government contract cannot bring breach of contract actions because the rights of such an assignee are "limited to its right to receive money under the contract." *Wyo. Nat'l Bank v. United States,* 154 Ct.Cl. 590, 594–95, 292 F.2d 511, 514 (1961); *see also Standard Federal Bank v. United States,* 51 Fed.Cl. 695, 710 (2002).

## C. *Even if the "Letter Agreement" Assigned the Claims, the Assignment Would Violate the Assignment of Claims Act*

 The Assignment of Claims Act, 31 U.S.C. § 3727 (2000) ("Anti–Assignment Act") states in relevant part:

(a) In this section, "assignment" means—

I. a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or

ii. the authorization to receive payment for any part of the claim.

(b) An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be

attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall promptly certify the assignment. The certificate shall state that the official completely explained the assignment when it was acknowledged. An assignment under this subsection is valid for any purpose.

31 U.S.C. § 3727(a), (b).

Plaintiffs contend that First Banks assigned River Valley's claims, not just the proceeds of those claims to them—the very sort of assignment defined by the statute. 31 U.S.C. § 3727(a)(1). This alleged assignment would have been made before, not after, any claim has been allowed, the amount of any claim has been decided, or a warrant for the payment of such claim has been issued. 31 U.S.C. § 3727(b). Moreover, the assignment was not attested to by two witnesses. *Id.* The alleged assignment was also not certified by a government official. The purported assignment, therefore, does not comply with the terms of the statute.

In contrast to voluntary assignments, which are generally void vis-à-vis the Government under the Anti–Assignment Act, courts have created exceptions to the Act for certain "transfers by operation of law," such as intestate succession, bankruptcy transfers, subrogation, assignments by judicial order, and a business merger, consolidation, sale, or other change in business structure. *See, e.g., Seaboard Air Line Ry. v. United States,* 256 U.S. 655, 41 S.Ct. 611, 65 L.Ed. 1149 (1921); *Johnson Controls World Serv., Inc. v. United States,* 44 Fed.Cl. 334, 344 (1999); *Standard Mfg. Co. v. United States,* 42 Fed.Cl. 748, 779 (1999). The attempted assignment from First Banks to Holland and Ross is not a transfer by operation of law. First Banks purchased all of plaintiffs' stock in River Valley when it acquired the thrift, such that Messrs. Holland and Ross were left with no remaining interest in River Valley after the sale. Joint Stipulation of Facts (Dec. 31, 2003) ¶¶ 372–74. Plaintiffs would have had no beneficial or other legally-recognized interest in River Valley after the sale, and any assignment from First Banks to them of River Valley's claims after the sale would have been a voluntary assignment and void vis-à-vis the Government under the Anti–Assignment Act.

Plaintiffs, in their briefs, asserted that "the assignment here raises none of the concerns underlying the Act, nor does it threaten in any way the government's ability to defend this case." Reply of Holland and Ross and First Banks in Supp. of Their Mot. to Join First Banks and for Leave to File the Second Am. Compl. ("Pls. Reply") at 28. Plaintiffs continued: "Under these circumstances, where an assignment of a claim against the government leaves a claim with its original, beneficial owners and imposes no burden on the government, this Court has upheld the assignment's validity." *Id.* (citing *Nat'l Austl. Bank v. United States,* 54 Fed.Cl. 238 (2002)). While plaintiffs correctly noted that there can be exceptions to the Anti–Assignment Act, the cases cited by plaintiffs are distinguishable from the case at bar. *National Australia Bank* involved wholly-owned subsidiaries assigning a claim to their parent company. *Nat'l Austl. Bank v. United States,* 54 Fed.Cl. at 239–40. In contrast, Messrs. Holland and Ross' alleged assignment involves an acquiring corporation (First Banks) assigning the claims of the acquired institution (River Valley) to two individuals (plaintiffs) who, after the acquisition, had no ownership interest in the acquired institution.

Two other cases that plaintiffs rely on, *Novo Trading Corp. v. Commissioner,* 113 F.2d 320 (2d Cir.1940) and *United States v. Improved Premises Located at the Northwest Corner of Irving Place and Sixteenth,* 204 F.Supp. 868 (S.D.N.Y.1962), are equally inapposite because they involved the transfer of claims from a closely held corporation to the corporation's stockholders made in the course of distributing the corporation's assets upon dissolution of the corporation. *See Novo Trading,* 113 F.2d at 321–22; *Improved Premises,* 204 F.Supp. at 871, 872. In contrast, River Valley was not dissolved and its assets were not distributed among its shareholders. Rather, River Valley was sold as a going concern to First Banks in January 1995. Joint Statement of Facts ¶¶ 370–374

(Dec. 31, 2003). The facts of this case are sufficiently distinct from those of plaintiffs' cited cases to warrant different treatment.

Even if plaintiffs are correct that the Letter Agreement assigned the claims, the assignment was not executed in accordance with the Anti–Assignment Act and is therefore void vis-à-vis the Government. Accordingly, plaintiffs' motion to amend the complaint to assert claims as assignees of First Banks is denied.

## II. First Banks is the Real Party In Interest Under the Standards Set Forth in RCFC 17(a) With Respect to the Claims of the Thrift Asserted by Holland and Ross

The United States Court of Appeals for the Federal Circuit has addressed RCFC 17(a) and stated that the rule "sets forth the broad and general principle that actions should be brought in the name of the real party in interest and that courts should be lenient in permitting ratification, joinder, or substitution of that party." *First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279, 1289 (Fed.Cir.1999).

RCFC 17(a) provides:

Every action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

■ "[W]here [a] suit is commenced by one who arguably has an interest in the enforcement of a claim and the real party in interest is later brought into the litigation, the joinder or substitution of the real party in interest relates back for limitations purposes to the date of the original pleading."

*Castle v. United States,* 48 Fed.Cl. 187, 194 (2000), *aff'd in part, rev'd in part* by 301 F.3d 1328 (Fed.Cir.2002).[6] There is no separate test for relation back. The rule provides that a complaint filed by a real party in interest automatically relates back. *See S. Cal. Fed. Sav. & Loan Ass'n v. United States,* 52 Fed.Cl. 444 (2002) ("Rule 17 does not involve the second test for relation back. The real party in interest simply steps into the shoes of the timely filed Plaintiff and thus is deemed timely."). Rule 17(a) applies not only to entire actions, but also to separate claims within an action. *Land Mine Enters. v. Sylvester Builders, Inc.,* 74 F.Supp.2d 401, 407 (S.D.N.Y.1999).

The Advisory Committee Notes to the Federal Rules of Civil Procedure ("FRCP"), Rule 17, which is almost identical to RCFC 17, explain that the rule "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Fed.R.Civ.P. 17 Advisory Committee Notes. Rule 17(a) is "intended to insure against forfeiture and injustice." *Id.* The Notes further state that "modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed." *Id.* The Government contends that plaintiffs and First Banks must show honest mistake in order to satisfy the test for real party in interest. The Court disagrees. While some courts discuss honest mistake, *see Scheufler v. Gen. Host Corp.,* 126 F.3d 1261 (10th Cir.1997), many others conclude that joinder as the real party in interest is proper without determining whether there has been honest mistake, *see First Annapolis Bancorp,* 54 Fed.Cl. at 542; *Am. Heritage Bancorp v. United States,* 53 Fed.Cl. 723 (2002); *Castle,* 48 Fed.Cl. at 193–95.

### A. Test For Joinder Under RCFC 17(a)

■ The court has articulated three factors to consider when determining whether

---

6. While the court in *Castle* found that FDIC's complaint could relate back to the date of the originally filed complaint in the case, the court ultimately held that the FDIC had ·to be dismissed because the complaint presented "a non-justiciable intra-governmental dispute and as such may not go forward here." *First Annapolis Bancorp, Inc. v. United States,* 54 Fed.Cl. 529, 542 (2002) (quoting *Castle,* 48 Fed.Cl. at 199).

to allow joinder of a real party in interest: 1) whether the defendant will be prejudiced, 2) whether the factual allegations of the complaint will change, and 3) whether the defendant is aware of the relevant parties. *Deponte Invs., Inc. v. United States*, 60 Fed.Cl. 9 (2004); *First Annapolis Bancorp*, 54 Fed. Cl. at 542 (citing *Scheufler*, 126 F.3d at 1270). The Court will address these factors *seriatim.*

### 1. *There is Little Prejudice to the Defendant*

In its opposition to plaintiffs' and First Banks' joint motion, the Government asserted that if First Banks is permitted to join as a plaintiff, the Government will suffer prejudice: "In short, to a significant degree, much of this case-eight-and-a-half years after it began-would have to start from the beginning." Def. Opp. at 56. When questioned at oral argument about this contention, defendant conceded. "Well, I don't-maybe that's a bit more dramatic than it need to have been ...." Transcript of Proceedings, Holland and Ross v. United States, 95–524C at 45 (Fed. Cl. April 29, 2004) ("Tr."). During oral argument, it became clear that the crux of the claimed prejudice to the Government was the perceived need to re-open discovery in order to defend against any claims that First Banks would bring.

The Court questioned the Government's contention that discovery would have to start anew, and the Government again conceded that it had overstated the amount of prejudice it would suffer: "Well, on the liability prong of it, I will agree with you, I don't think that there is something that we're going to find on the liability prong of it." *Id.* at 55. The Court, in an effort to clarify defendant's position, asked: "So there is no additional discovery that would be required in order to deal with the liability issue[?]" *Id.* The Government answered, "I think that's correct." *Id.* The discussion then turned to what discovery would be needed regarding damages. Defendant stated: "If there is absolutely no change [in damages theories], and if First Banks is barred from making any additional change whatsoever, then the prejudice on the issue of expert discovery is

lessened." *Id.* at 60. The Court again asked a clarifying question: "If First Banks takes the position as you were describing it, absolutely no change in the theories of damages or the anticipated proof on damages, then presumably, at least unless I'm missing something, large portions of the government's motion for summary judgment on damages are ready to roll." *Id.* The Government responded, "Presumably, that's correct." Tr. at 60.

Despite the Government's position that there is a general prejudice to defendant in allowing First Banks to join as a plaintiff, having parsed the Government's argument, the Court concludes that the prejudice to the Government in this circumstance is minimal.

### 2. *The Factual Allegations Will Not Change*

As evidenced by the proposed second amended complaint, the factual allegations made by First Banks are the same as those asserted by Messrs. Holland and Ross. The case will continue to involve the same contracts (Republic and Galva, Home, and Mutual), the same alleged conduct by the Government (breach resulting from enactment of FIRREA), and the same damages (lost profits/expectancy damages and lost value). Additionally, First Banks has represented to the Court that it is not its intention to change the nature of this case, nor the factual allegations underlying the parties' claims: "So, in terms of the nature of the cause of action and the claims, Your Honor, it's the same, and the Court has held that those claims, the cause of action seeking those damages does not belong to Holland and Ross.... We will have the same-it's lost profits, lost value of the stock in the thrift. We will not seek to revive the restitution, the reliance. It is the same fundamental theories of damages and the like.... The nature of the damages will be identical ...." Tr. at 88–89.

### 3. *Defendant Has Been Aware of First Banks Since the Beginning of this Action*

The Government has been aware of First Banks' role in this case since 1995. The Government served 90 paragraphs of docu-

ment requests on First Banks relating to the purchase, valuation, sale, divestiture and transfer of River Valley Holdings to First Banks. The Government also requested all documents relating to any proposed or actual agreement for First Banks to buy River Valley, and all documents relating to the effect of the goodwill and capital credit on the condition of River Valley. *Id.* at 90. The Government has deposed at least two key executives from First Banks. *Id.* Additionally, defendant has been in contact with the attorneys for First Banks throughout this litigation. *See, e.g.,* February 18, 2004 Tr. at 42; Letter from Donald Gunn, Jr., Gunn and Gunn to John Roberson, U.S. Dep't of Justice, dated Feb. 20, 2004.

B. *The Government's Attempt to Distinguish "Claim" and "Cause of Action" from "Theory of Recovery" is Unpersuasive*

The Government spent much time at oral argument, and in its supplemental briefs, attempting to distinguish between "claim," "cause of action," and "theory of recovery," stating that it never argued that plaintiffs were not the proper party to pursue their "cause of action." Rather, the Government contends, it only challenged plaintiffs' ability to proceed on their "theories of recovery." Accordingly, the Government posits, RCFC 17(a) is not the proper procedural rubric under which to analyze the proposed joinder of First Banks.

In analyzing defendant's argument on this point, it is important to note that according to the law of this circuit, "a 'claim' is 'a cause of action.'" *Hallco Mfg. Co. v. Foster,* 256 F.3d 1290, 1294 (Fed.Cir.2001). The terms are essentially synonymous. The parties, in briefing the Government's December 2003 Motion to Dismiss rarely used the term "cause of action." The Government, however, repeatedly used the term "claim" in reference to what it now calls plaintiffs' "theories of recovery." Defendant's Motion to Dismiss, filed December 2, 2003 ("Def. Mot.") begins: "Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ('RCFC'), defendant, the United States, respectfully requests that this Court

dismiss *the breach of contract claims* of Homer Holland and Howard Ross ...." Def. Mot. at 1 (emphasis added). Defendant's reply brief, filed December 24, 2004 ("Def. Reply") similarly states:

Defendant, the United States, respectfully submits this reply in support of our motion to dismiss the *breach of contract claims* of plaintiffs, Homer J. Holland and Howard R. Ross ("Messrs. Holland and Ross" or "shareholder plaintiffs"). We demonstrated in our motion that Messrs. Holland and Ross are not permitted, as a matter of law, to bring direct *actions* to pursue either their alleged expectancy or their diminished equity value *damage claim* because *these claims belong solely to the corporate thrifts* or holding companies, of which Messrs. Holland and Ross were shareholders.

Def. Reply at 1 (emphasis added). Because "claim" and "cause of action" are synonyms, by asserting that plaintiffs' "claims belong solely to the corporate thrifts," defendant did, in fact, argue that plaintiffs were not the proper parties to pursue their "causes of action."

The Court adopted the position of the Government in its March 9, 2004 Opinion and Order granting in part defendant's motion to dismiss. In the Court's Opinion and Order of March 9, the Court held that the *claims* that Holland and Ross were asserting belong to the thrift: the expectancy damages and lost value that plaintiffs sought, were "damages incurred by River Valley, and the *claim* to recover those damages belongs to River Valley, not Holland and Ross." *Holland,* 59 Fed.Cl. at 741 (emphasis added). The Government did not move for reconsideration of the Court's use of the term "claim" or "claims." Indeed, the Government had itself argued that "First Banks became the real party in interest with respect to River Valley FSB's claims when it acquired River Valley FSB in 1995." Def. Reply at 8. The Government's attempt now to distinguish between "claim," "cause of action," and "theory of recovery" is artificial and futile, to say nothing of inconsistent with defendant's earlier argument that plaintiffs' complaint should be dismissed because "the expectancy damages

*claims* are *claims* of River Valley FSB," Def. Reply at 11 (emphasis added), and "the lost value *claim* is a *claim* of River Valley FSB," Def. Reply at 13 (emphasis added).

The Tenth Circuit addressed a similar argument and rejected the sort of distinction that defendant is advocating:

> In a secondary argument, defendant contends that it never moved for dismissal of any "action" or any "plaintiff," and therefore the district court should not have relied on Rule 17(a). This argument is disingenuous.... By claiming mid-trial that the [third parties] were real parties in interest, defendant was essentially seeking dismissal of the [third parties'] claims for damages (which [the original plaintiffs] thought they had a right to bring). Accordingly we conclude it was entirely appropriate for the district court to rely on Rule 17(a) in determining whether the [third parties] were real parties in interest and joining them as parties to the action.

*Scheufler,* 126 F.3d at 1270. This Court likewise rejects the Government's argument that RCFC 17(a) is not a proper procedural vehicle for joining First Banks as a plaintiff.

### C. Joinder of Real Parties in Interest has Been Permitted in Winstar Cases

The applicability of RCFC 17(a) in the context of *Winstar* cases has been well analyzed by this court. In *Castle,* the Government argued, as it does here, that the FDIC's intervention could not relate back to the filing date of the original complaint because "that complaint did not assert a claim on behalf of the failed thrift but rather a claim on behalf of the individual shareholders." 48 Fed.Cl. at 195. The Government in *Castle* argued that "the FDIC cannot use the investor plaintiffs' complaints as a surrogate for [its] claim on behalf of [the bank]." *Id.* The Court responded:

> We cannot accept this contention. The core dispute presented in the complaint involves the government's breach, occasioned by the enactment of FIRREA, of specific contractual rights .... The source of these rights is identified as those "set forth in, *inter alia,* an Acquisition Approval Letter issued by FHLBB, and a Regulatory Capital Maintenance Agreement ... entered into by the [thrift], plaintiffs Castle and Harlan, and FSLIC." In view of these recitals, there can be no question that the contract rights brought into issue in the complaint implicate the bank's rights at least to the same extent as those of the shareholder-plaintiffs. Therefore, the fact that the complaint filed sought recovery only in the name of the shareholder-plaintiffs (and not also the bank) can hardly provide a reason for saying that the FDIC should now be denied its rightful place in the litigation. The transaction sued on was a contract to which the bank was a party. Plainly, then, the bank had an interest in the subject matter of the suit. Hence, since the FDIC is the bank's successor-in-interest, the FDIC's intervention must be judged to relate back to the date of the original complaint's filing.

*Castle,* 48 Fed.Cl. at 195.

Similarly, in *First Annapolis Bancorp., Inc. v. United States,* the court held:

> Based on the FDIC's capacity as the successor-in-interest to First Annapolis, the similarity of the factual basis for the allegations, and the claims for relief requested by the plaintiff's complaint and the FDIC's complaint, the FDIC is a real party in interest, which could, in theory, be joined. Therefore, the FDIC's complaint relates back to the filing of the plaintiff's complaint ... pursuant to RCFC 17(a) and is not barred on the grounds of statute of limitations.

54 Fed.Cl. at 543.

Likewise, in *American Heritage Bancorp v. United States,* the court applied RCFC 17(a) in allowing the FDIC to join the action and permitting its intervention to relate back to the date of the original complaint's filing. 53 Fed.Cl. 723. The court explained:

> In order to determine whether FDIC is a real party in interest, and therefore eligible to relate its claims back to the date of [American Heritage Bancorp ("AHB")]'s complaint for limitations reasons, it is necessary to examine each party's claims. In particular, to the extent AHB sought damages that may belong to the failed bank,

these claims now belong to the FDIC as receiver.

*American Heritage,* 53 Fed.Cl. at 730. The court then quoted *Castle:* "If 'the contract rights brought into issue in the [original] complaint implicate the bank's rights at least to the same extent as those of the shareholder-plaintiffs ... then, the bank had an interest in the subject matter of the suit. Hence, since the FDIC is the bank's successor-in-interest, the FDIC's intervention must be judged to relate back to the date of the original complaint's filing.' " *Id.* (quoting *Castle,* 48 Fed.Cl. at 195). Judge Firestone concluded that "[a]n examination of AHB's original complaint and the FDIC's complaint-in-intervention demonstrates that AHB and FDIC plainly have numerous overlapping claims for the same damages for breach of contract and takings arising out of FIR-REA." *Id.*

Judge Wiese again addressed this issue in *Bank of America, FSB v. United States,* 51 Fed.Cl. 500 (2002). In allowing the claims of the investor plaintiffs to relate back to the original complaint, the court highlighted the fact that "investor plaintiffs' participation in the suit in no way enlarges the fact, nature, or amount of the government's liability. The scope of the claim remains the same: a claim for a single injury caused by the deprivation of supervisory goodwill." *Id.* at 514. As discussed *supra* at 402, the addition of First Banks to this case will not enlarge the nature or scope of the claim.

In *Bank of America,* the court concluded that the shareholder plaintiffs were in essence pursuing the same claim as Bank of America: compensation for the injury caused when their supervisory goodwill was no longer counted in a way consistent with their contract. *Id.* at 515. Defendant was thus not prejudiced by the inclusion of the plaintiff investors because their participation required no revision of the Government's defense. *Id.* Whether the claim ultimately belonged to investor plaintiffs or to Bank of America in no way altered defendant's liability, or the nature of the case. *Id.* Under such circumstances, the Court found the claims of investor plaintiffs to related back

under Rule 17 to Bank of America's timely filed claim. *Id.*

D. *Plaintiffs and First Banks have Fulfilled the "Reasonable Time After Objection" Requirement*

■ Defendant asserts that plaintiffs and First Banks have not met the requirement of seeking to join within a "reasonable time ... after objection." RCFC 17(a); Tr. at 65–66; Def.'s Mem. Submitted in Accordance with the Ct.'s Order dated Apr. 30, 2004, Filed May 5, 2004 ("Def. Mem."). Defendant contends that it informed plaintiffs in a settlement letter in April 2001, that "only the thrift, and not shareholder plaintiffs, would be entitled to recover such expectancy damages." Def. Mem. at 3. The Government argues that the April 2001 letter constituted its "objection" to plaintiffs' ability to assert so-called expectancy damages, such that plaintiffs had a "reasonable time" from April 2001 to join First Banks, and that plaintiffs' attempt to join First Banks in March 2004 comes too late.

Defendant's analysis is incorrect. Defendant's private communications with plaintiffs, not filed with the Court and not subject to Rule 11, do not constitute an "objection" within the purview of RCFC 17(a). Defendant's letter simply stated its position on the matter-a position that in 2001 was not settled in this circuit. Defendant argues that because it cited *Statesman Savings Holding Corp. v. United States,* 41 Fed.Cl. 1 (1998), in its April 2001 letter, the Court should find that the letter constitutes an "objection" within the meaning of RCFC 17(a). While this Court ultimately agreed with and adopted the reasoning in *Statesman,* this Court was not bound by that decision and could have reached a different result. The Government's citation to *Statesman* did not mean that it was a foregone conclusion that plaintiffs would be found not to be the real parties in interest with respect to any of the claims remaining in this action. In fact, even as late at 2002, the issue of who was the real party in interest regarding *Winstar* claims was unsettled in this circuit:

> while there can, in this instance, be only one recovery, it is not clear to whom the

recovery belongs. No court has directly addressed the question of whether recovery for goodwill denied properly belongs to the bank, to its investors or holding company, or to its subsequent purchasers or receivers. And because we cannot conclude with certainty who the proper plaintiff in interest will be, we therefore cannot exclude litigants who may properly be before the court.

*Bank of Am., FSB v. United States,* 51 Fed. Cl. at 514.

Further, "[a] motion, either by the parties or by the court, must be made in order to notify the disputed party of the error." *Cont'l Ins. Co. v. N.A.D., Inc.,* 16 Fed. Appx. 659, 661 (9th Cir.2001).[7] The Court of Appeals for the D.C. Circuit anticipated that a Rule 17(a) defense would be raised as a 12(b)(6) motion or as a Rule 8(c) defense. *Whelan v. Abell,* 953 F.2d 663, 672 (D.C.Cir. 1992) (Ginsburg, Silberman, and Thomas, JJ.). The D.C. Circuit further posited: "Regardless of what vehicle is used for presenting the objection [12(b)(6) motion or 8(c) defense], it should be done with reasonable promptness." *Id.* (quoting 6A C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 1554, at 407 (1990)). In the case cited by the Government, *Consul General of the Republic of Indonesia v. Bill's Rentals, Inc.,* the objection took the form of a motion to strike and a supporting brief. 330 F.3d 1041, 1044 (8th Cir.2003).

If defendant was sure in April 2001 that plaintiffs were not the real parties in interest in this action, it should have filed a motion to dismiss at that time. It did not. Instead it waited until after the liability decision, and filed a motion to dismiss in December 2003. The December 2003 motion constituted defendant's "objection" to plaintiffs as the real parties in interest. This Court issued a decision in March 2004 in which it determined that plaintiffs were not the real parties in interest with respect to their claims for expectancy damages and lost value and gave plaintiffs and First Banks until March 31,

2004 to file a motion to join First Banks. *Holland,* 59 Fed.Cl. at 741–42. Plaintiffs' and First Banks filed their joint motion within the time prescribed by the Court, and within a "reasonable time ... after objection." RCFC 17(a).

Accordingly, the joint motion of plaintiffs and First Banks to join First Banks as a plaintiff pursuant to RCFC 17(a) is granted.

## III. First Banks Can Properly Be Joined as a Plaintiff Pursuant to RCFC 15, and First Banks' Claims Relate Back for the Purposes of the Statute of Limitations

### A. *Plaintiffs May Amend Their Complaint Pursuant to RCFC 15(a)*

RCFC 15(a) provides, in pertinent part: "A party may amend the party's pleadings ... by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The decision as to whether to grant leave to amend a complaint under Rule 15 falls within the sound discretion of the trial court. *Olech v. Vill. of Willowbrook,* 138 F.Supp.2d 1036 (N.D.Ill.2000) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971)). This liberal policy of granting amendments is based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations. *Id.* (citing *Schiavone v. Fortune,* 477 U.S. 21, 27, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986)). The Supreme Court has identified the kinds of circumstances that can warrant denial of leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, futility of amendment, etc." *Foman v. Davis,* 371 U.S. at 182, 83 S.Ct. 227.

As discussed *supra* at 405, there is no evidence of undue delay by plaintiff. Also, defendant has not shown that First Banks or plaintiffs acted in bad faith. The Court does

---

7. *See Griffy's Landscape Maint., LLC v. United States,* 51 Fed.Cl. 667, 673 (2001) ("We accept as helpful authority, albeit not binding precedent, those [legal decisions] we find sound. We think we may do the same with the unpublished opinions of the circuit courts of appeals, ... as we do with the opinions those courts publish.").

not believe that plaintiffs had a dilatory motive-Messrs. Holland and Ross thought they could assert the claims, and they did so in a timely manner. Furthermore, while plaintiffs amended their complaint in October 2003, they did so pursuant to an Order of the Court, for a specific purpose. Plaintiffs were not free at that time to amend their complaint at will. Because courts should permit amendments when "justice so requires," RCFC 15(a), and the circumstances in this case do not warrant denial of leave to amend, *see Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. 227, plaintiffs' motion for leave to amend to join First Banks pursuant to RCFC 15(a) is granted.

### B. *Plaintiffs and First Banks Meet the RCFC 15(c)(2) Test for Relation Back*

It is undisputed that a claim by First Banks would run afoul of the six-year statute of limitations. *See* 28 U.S.C. § 2501 ("Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"). Thus, it is not sufficient for First Banks and plaintiffs to simply amend their complaint; First Banks' claims must be determined to "relate back" to Holland and Ross' original complaint. RCFC 15(c) governs "relation back." An amendment of a pleading relates back to the date of the original pleading when:

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

RCFC 15(c).

Plaintiffs are seeking in this motion to add a plaintiff. Thus, the Court will apply RCFC 15(c)(2), rather than RCFC 15(c)(3), which governs amendments to add defendants. *See Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1369 (2004) (in deciding whether amendment adding a plaintiff could relate back, used "conduct, transaction, or occurrence" test found in RCFC 15(c)(2)); *Creppel v. United States*, 33 Fed.Cl. 590 (1995); *Baldwin Park Cmty. Hosp. v. United States*, 231 Ct.Cl. 1011, 1982 WL 25837 (1982) (relying on then Rule 39(c), relation back based on same "conduct, transaction, or occurrence"). Because addition of new plaintiffs is analyzed under RCFC 15(c)(2), the mistake requirement of RCFC 15(c)(3) does not apply. When determining whether an amendment should relate back, the "fundamental question is not why the plaintiff failed to act sooner, but rather whether the late addition to the case comes without fair notice to the defendant and would cause undue prejudice." *Olech*, 138 F.Supp.2d at 1047. Additionally, "[t]he reasons for the delay in adding the plaintiff are immaterial to that inquiry." *Id.* at 1044.

The test for relation back has been developed to include four factors: 1) whether the new plaintiff's claim arose out of the "same conduct, transaction, or occurrence" as the original complaint; 2) whether the new plaintiff shares an "identity of interest" with the original plaintiff; 3) whether the defendant had "fair notice" of the new plaintiff's claim; and 4) whether the addition of the new plaintiff causes the defendant prejudice. *Baldwin Park*, 231 Ct.Cl. 1011 (1982); *Snoqualmie Tribe of Indians v. United States*, 178 Ct.Cl. 570, 586–87, 372 F.2d 951, 960 (1967); *Olech*, 138 F.Supp.2d at 1041. These four factors closely parallel the three-prong test for joinder of the real party in interest pursuant to RCFC 17(a), *see supra* at ——,

and thus, several of these factors have been discussed above.

### 1. The New Plaintiff's Claims Arose Out of the "Same Conduct, Transaction, or Occurrence" Set Forth in the Original Complaint

First Banks' claims, as set forth in the proposed second amended complaint, clearly arose out of the same conduct, transaction, or occurrence set forth by Messrs. Holland and Ross in their original complaint. The core dispute is the same. Like Messrs. Holland and Ross, First Banks' claim is based on the Government's breach, because of FIRREA, of contracts between the Government and River Valley regarding the Republic Savings and Galva, Home, and Mutual transactions. *See* Pls. Mot. at Ex. A.

### 2. The New Plaintiff Shares an "Identity of Interest" With the Original Plaintiff

Under this prong of the test, the salient question is whether "the new plaintiff is sufficiently related so that the new plaintiff was in effect 'involved in the proceedings unofficially from an early stage.' " *Staren v. Am. Nat'l Bank & Trust Co.*, 529 F.2d 1257 (7th Cir.1976); *Creppel v. United States*, 33 Fed. Cl. 590 (1995); *Nielsen v. Prof'l Fin. Mgmt.*, 682 F.Supp. 429 (D.Minn.1987). First Banks is sufficiently related to the shareholder plaintiffs. Messrs. Holland and Ross essentially created, controlled, and owned River Valley. *See generally Holland*, 57 Fed.Cl. 540; *see also* Joint Stipulation of Facts (Dec. 31, 2003) ¶¶ 167, 329. First Banks purchased River Valley from them. Furthermore, First Banks has been involved in the proceedings from an early stage. The Government has requested and received documents from First Banks, has deposed First Banks personnel, and has communicated with First Banks' counsel throughout this litigation. *See supra* at 402.

### 3. The Government Had "Fair Notice" of the New Plaintiff's Claim

This element requires only that defendant had "fair notice that a legal claim existed." *Creppel*, 33 Fed.Cl. at 597. The Government has known for years that a legal claim existed with respect to the thrift. The Republic Savings and Galva, Home, and Mutual contracts, to which the court found that Messrs. Holland and Ross were in privity, *see Holland*, 57 Fed.Cl. 540, were contracts between the Government and River Valley. Messrs. Holland and Ross alleged, and the Court held, that the Government breached those contracts. *Id.* Clearly then, First Banks, as successor-in-interest to River Valley, had a breach of contract claim [8] against the Government.

### 4. The Addition of First Banks Does Not Cause Prejudice to the Government

Prejudice exists if "relevant evidence has been lost or compromised due to the passage of time, or where the proposed amendment does not afford defendant adequate time for discovery." *Olech*, 138 F.Supp.2d at 1046. As discussed in detail, *supra* at 401, the prejudice to the Government in allowing the amendment is negligible.

Plaintiffs and First Banks have met the requirements for amending the complaint pursuant to RCFC 15(a) to add a new plaintiff. Additionally, First Banks' claims will relate back to the date of Holland and Ross' original complaint because the proposed amendments fulfill the requirements of RCFC 15(c).

### CONCLUSION

For the reasons discussed above, the joint motion of plaintiffs and First Banks to join First Banks and for leave to file the second amended complaint is GRANTED in part and DENIED in part. Pursuant to RCFC 17(a), First Banks may join the action as a

---

8. Messrs. Holland and Ross, in their initial complaint also asserted so-called "Constitutional claims." In the proposed second amended complaint, First Banks likewise asserts such claims on behalf of River Valley. By order dated November 2, 2000, Judge Smith provided that "the court will stay indefinitely the obligation to respond to motions for summary judgment and/or motions to dismiss regarding constitutional claims. This category primarily includes, but is not limited to, Constitutional taking and due process claims." *Holland*, 57 Fed.Cl. at 541. The Court, therefore, expresses no opinion as to the merits of those Constitutional claims.

plaintiff. It is the real party in interest with respect to the claims that Holland and Ross sought to assert to recover damages that this Court held were recoverable only by the thrift or its successor in interest, First Banks. In accordance with RCFC 17(a), First Banks' claims automatically relate back, for the purposes of the statute of limitations, to the date plaintiffs' original complaint was filed. Plaintiffs may also amend their complaint to add First Banks as a plaintiff pursuant to RCFC 15(a). Such an amendment shall relate back to the date the original complaint was filed by Messrs. Holland and Ross. *See* RCFC 15(c). Plaintiffs, however, are not permitted to amend their complaint in order to proceed in this action as assignees of River Valley's claims. To that extent, their motion for leave to file a second amended complaint is denied.

The Court ORDERS that plaintiffs Holland and Ross and First Banks shall file and serve a further amended complaint consistent with this Opinion and Order by Friday, October 29, 2004.

IT IS SO ORDERED.